968 So.2d 779 (2007)
Anna ROBERTSON
v.
DEPARTMENT OF POLICE.
No. 2007-CA-0795.
Court of Appeal of Louisiana, Fourth Circuit.
October 3, 2007.
*780 Gary M. Pendergast, New Orleans, LA, for Plaintiff/Appellant.
Penya Moses-Fields, City Attorney, Joseph V. DiRosa, Jr., Chief Deputy City Attorney, Victor L. Papai, Jr., Assistant City Attorney, Joanna Krawczyk, Law Clerk, New Orleans, LA, for Defendant/Appellee.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge PATRICIA RIVET MURRAY, Judge TERRI F. LOVE).
PATRICIA RIVET MURRAY, Judge.
Plaintiff Anna Robertson appeals the decision of the New Orleans Civil Service Commission ["the Commission"] which upheld her suspension and subsequent dismissal by the New Orleans Police Department ["NOPD"]. For the reasons that follow, we affirm.
FACTS AND PROCEEDINGS BELOW
The appellant, who held the rank of Police Officer I, was assigned to NOPD District 3. Hurricane Katrina made landfall near New Orleans on August 29, 2005. Officer Robertson was charged with failing to report for duty as ordered on August 28, 2005 and being absent from her job without permission through September 19, 2005. When she reported for duty on September 19, Officer Robertson was placed on suspension effective September 20, 2005. A disciplinary hearing was held on December 6, 2005, following which Officer Robertson was dismissed for neglect of duty effective the same day. Officer Robertson appealed her suspension and subsequent dismissal to the Commission, which heard the appeal on April 18, 2006.
At the hearing, only two witnesses testified: Sergeant Lawrence Jones for the NOPD and Officer Robertson on her own behalf. Sergeant Jones testified that he was the NOPD officer who was assigned to investigate Officer Robertson's case. Sergeant Jones took a statement from Officer Robertson's immediate supervisor, Sergeant Troy Williams, who said that he had ordered Officer Robertson to report for duty on August 28, 2005. Sometime before 5:00 p.m. on August 28, Officer Robertson called Sergeant Troy and reported that she was attempting to return to New Orleans from Diamondhead, Mississippi, but had been stopped by St. Tammany Parish deputies, who had refused to let her proceed any further due to contraflow, which was directing all traffic away from *781 New Orleans. Sergeant Troy did not hear from Officer Robertson again until she reported on September 19.
Sergeant Jones determined from his investigation that, because the weather had significantly deteriorated by 6:00 p.m. on August 28, Officer Robertson returned to her parents' home in Diamondhead, where she rode out the hurricane alone on August 29 and 30. Afterward, she was unable to leave because her vehicle was blocked by fallen trees. Her husband, also an NOPD officer, arrived in Diamondhead shortly thereafter, having been granted permission to leave the city to search for his wife. The couple then remained in Diamondhead together for a few days because there was not enough gas in her husband's car to return to the city, and no gas stations were open. Approximately nine days after the storm, Officer Robertson's father showed up in Diamondhead to check on his property. At this point Officer Robertson and her husband decided to go to Tallahassee with her father, where the couple's infant daughter was being cared for by Officer Robertson's mother. After remaining in Florida approximately two weeks, the couple returned to Diamondhead. On September 16, Officer Robertson's husband reported to the NOPD and voluntarily resigned from his job. Officer Robertson, however, did not report until three days later, on September 19. Sergeant Jones testified that during his interview of Officer Robertson, she said she had made no attempt to contact the NOPD during her stay in Florida. She also said she had decided to go back to Florida with her father because she believed he only had enough gas to return there. Sergeant Jones further testified that he had been unable to determine in the course of his investigation whether gas had been available in the area at that time.
At the conclusion of Sergeant Jones's testimony, the parties entered two stipulations into the record. They first stipulated that Sergeant Troy Williams, if he had been called as a witness, would have testified to the same facts as those given in his statement to Sergeant Jones. The second stipulation was that Deputy Superintendent Marlon Defillo, if he had appeared, would have testified as follows: that he was present at the December 6, 2005, disciplinary hearing concerning Officer Robertson; that the police commanders who conducted the hearing were satisfied that Officer Robertson had been absent from her job without permission from August 28 until September 19, 2005; and that those commanders had recommended that, based upon the length of her absence, Officer Robertson be dismissed in addition the suspension already imposed upon her.
Officer Robertson then testified in her own behalf. She stated prior to the December, 2004, birth of her child, the NOPD had assigned her to a desk job in the Third District. She had returned to the desk job after having her baby. Officer Robertson testified that although she had asked to be switched back to street patrol, the switch had not yet occurred when Hurricane Katrina struck. On Saturday August 27, 2005, Officer Robertson went to Diamondhead, Mississippi to bring her baby daughter to her parents, who were evacuating to Florida. On Sunday afternoon, she attempted to drive to New Orleans to report for work as scheduled at 5:00 p.m., but she was stopped in St. Tammany Parish due to the contraflow. Officer Robertson's testimony relating what happened between August 28 and September 18 was essentially the same as the account she had given Sergeant Jones in her statement. According to her testimony, she went to New Orleans on September 18 intending to report for work, but she could not find anyone to give her an assignment that day.
*782 She also explained that she had not gone into the city with her husband on September 16 because her mother was no longer willing to care for her baby. On cross-examination, Officer Robertson testified that it had not occurred to her to attempt to siphon gas from her trapped vehicle to use in either her husband's or her father's car. She also stated that when her father arrived in Diamondhead, she did not ask him to take her to New Orleans because she did not know whether he would need the extra 5-gallon can of gas he was carrying to make it back to Florida.
Based upon the testimony presented at the hearing, the Commission found that Officer Robertson's account of the events that occurred after the passage of Hurricane Katrina did not provide a legitimate basis to conclude that she was prevented from reporting for duty for the lengthy period of her absence. The Commission further noted that although the appellant had been a good officer during her short career with the NOPD, her absence at such a critical time in the city's history could not be overlooked, and the fact that she did not return earlier left her subject to the NOPD's necessarily firm policy regarding unauthorized absences of such a length. The Commission therefore dismissed Officer Robertson's appeal of her suspension and termination.
APPLICABLE LAW
An employer cannot subject an employee who has gained permanent status in the classified city civil service to disciplinary action except for cause expressed in writing. La. Const. Art. X, § 8(A); Walters v. Department of Police, 454 So.2d 106, 112 (La.1984). The employee may appeal from such a disciplinary action to the Commission. Id. The Commission has a duty to decide independently from the facts presented whether the appointing authority had good and lawful cause for taking the disciplinary action and, if so, whether the punishment imposed was commensurate with the dereliction. Id. at 113. Legal cause exists whenever the employee's conduct impairs the efficiency of the public service in which the employee is engaged. Cittadino v. Department of Police, 558 So.2d 1311, 1315 (La.App. 4th Cir.1990). The appointing authority bears the burden of proving by a preponderance of the evidence that the conduct complained of occurred and that the conduct impaired the efficiency of the public service. Id. The appointing authority must also prove that the actions complained of bore a real and substantial relationship to the efficient operation of the public service. Id.
In civil service disciplinary cases, the appellate court has a multifaceted standard of review. First, as in other civil matters, deference must be given to the factual findings made by the Commission, which should not be disturbed unless manifestly erroneous or clearly wrong. Second, in evaluating the Commission's determination as to whether the disciplinary action is both based on legal cause and commensurate with the infraction, the appellate court should not modify the Commission's order unless it is arbitrary, capricious, or characterized by an abuse of discretion. Bannister v. Department of Streets, 95-404, p. 8 (La.1/16/96), 666 So.2d 641, 647 (citations omitted).
DISCUSSION
Applying these legal principles to the facts of the instant case, we conclude that the Commission did not abuse its discretion by dismissing Officer Robertson's appeal. Officer Robertson did not dispute that she was absent from her job without authorization for time period for which she was disciplined. While it may have been impossible for her to report in *783 or to contact the NOPD in immediate aftermath of Hurricane Katrina, she did not adequately explain why she did not attempt to do so later on and instead decided to go to Florida with her father for two weeks. The crisis that existed in New Orleans in the weeks following the hurricane and the need of the NOPD for its officers during that critical time is undeniable. This court also recognizes the NOPD's legitimate objective to maintain uniformity in the penalties imposed upon those officers whose unexcused failure to return to their jobs within a reasonable time after the storm clearly hampered the ability of the Police Department to function effectively during the crisis. We therefore conclude that the Commission did not err by upholding Officer Robertson's suspension and termination.
CONCLUSION
Accordingly, we affirm the ruling of the Commission.
AFFIRMED.