981 So.2d 38 (2008)
Phylis SABEL
v.
DEPARTMENT OF POLICE.
No. 2007-CA-1545.
Court of Appeal of Louisiana, Fourth Circuit.
February 27, 2008.
*39 Gary M. Pendergast, New Orleans, LA, for Plaintiff/Appellant.
Penya Moses-Fields, City Attorney, Victor L. Papai, Jr., Assistant City Attorney, Joseph V. DiRosa, Jr., Chief Deputy City Attorney, Maureen McGough, Law Clerk, New Orleans, LA, for Defendant/Appellee.
(Court composed of Judge CHARLES R. JONES, Judge DENNIS R. BAGNERIS, SR., and Judge TERRI F. LOVE).
CHARLES R. JONES, Judge.
The Appellant, Officer Phylis Sabel, seeks review of a Civil Service Commission decision which upheld her termination from the New Orleans Police Department for neglect of duty. We affirm.
Officer Sabel was hired by the New Orleans Police Department on November 17, 1991. Prior to Hurricane Katrina, she was employed as a Police Officer with permanent status and had acquired that status as of October 1, 2001.
The facts in this case are not in dispute. On August 28, 2005, Officer Sabel was ordered to report to duty at 4:00 p.m. on August 29, 2005. Officer Sabel did not report because she was in Houston, Texas, where she evacuated with her husband and children. She testified that on August 28, 2005, after being ordered to report on August 29, 2005, she decided to evacuate with her husband, who is a 30-year NOPD veteran, and children. Officer Sabel further testified that she believed that she could escort her family out of town and make it back to work for her 4:00 p.m. shift on August 29, 2005.
After allegedly making daily attempts to contact her superiors following Hurricane Katrina, Officer Sabel returned to New Orleans on September 11, 2005, and worked her first shift on September 12, 2005. She did not have permission from her superior officers to miss any length of time from work following the hurricane. Additionally, she did not notify her superiors on August 28th that she would be escorting her family out of town and returning for her shift. She contends that she made numerous attempts to contact her supervisor to get instructions, but to no avail. In total, Officer Sabel missed 14 days of work.[1]
Officer Sabel raises two (2) issues on appeal: 1.) her unexcused absence did not warrant termination under the existing disciplinary schedule established by the Appointing Authority which called for suspension, not termination, for unexcused absences up to 14 days, and 2.) her termination *40 was inconsistent with the punishment determinations of the Appointing Authority for other police officers similarly situated.
The Civil Service Commission's findings of fact should be given the same deference as those made by a judge or jury and, accordingly, the standard of review does not differ from that in other civil service cases, and the Commission's determination should be affirmed unless it is manifestly erroneous or clearly wrong. Bruno v. Department of Police, 462 So.2d 139, 141 (La.1985) (citations omitted).
In Robertson v. Department of Police, 07-0795 (La.App. 4 Cir. 10/3/07), 968 So.2d 779, we set forth the standard of review in civil service disciplinary cases as follows:
[T]he appellate court has a multifaceted standard of review. First, as in other civil matters, deference must be given to the factual findings made by the Commission, which should not be disturbed unless manifestly erroneous or clearly wrong. Second, in evaluating the Commission's determination as to whether the disciplinary action is both based on legal cause and commensurate with the infraction, the appellate court should not modify the Commission's order unless it is arbitrary, capricious, or characterized by an abuse of discretion. (citing Bannister v. Department of Streets, 95-404, p. 8 (La.1/16/96), 666 So.2d 641, 647 (citations omitted)).
Legal cause exists whenever the employee's conduct impairs the efficiency of the public service in which the employee is engaged. Cittadino v. Department of Police, 558 So.2d 1311, 1315 (La.App. 4 Cir.1990). A decision by the Civil Service Commission is "arbitrary or capricious" if there is no rational basis for the action taken by the Civil Service Commission. Bannister v. Department of Streets, 95-0404, p. 8 (La.1/16/96), 666 So.2d 641, 647.
Furthermore, in Cure v. Department of Police, 07-0166 (La.App. 4 Cir. 8/1/07), 964 So.2d 1093, we held "[t]he use of a schedule during the difficult post Katrina times is understandable. Whether the punishment called for by the schedule constitutes an abuse of discretion depends on the facts of the particular case to which the schedule is applied." Id. at p. 3, 964 So.2d at 1095.
Officer Sabel maintains that she missed 13 days of work and that under the Appointing Authority's disciplinary schedule she should have been suspended, not terminated.
It is uncontested that Officer Sabel was absent without leave ("AWOL") for at least 13 days. Her justification for being absent was that she was evacuating her family with her husband sometime prior to August 29, 2005. As a result of hurricane traffic flow, she was allegedly unable to return to the city until September 11, 2005.
There are no extenuating circumstances surrounding Officer Sabel's infraction that would justify the Appointing Authority, the Civil Service Commission or our Court to be lenient. The record does not reveal that Officer Sabel's husband was physically impaired or otherwise unable to secure his safety and the safety of their children on his own. She testified that she decided to leave for Houston, Texas with her husband on August 28, 2005, the day before she was assigned to report to work.
Chief Steven B. Nicholas, a Police Assistant Superintendent of the Operations Bureau of the NOPD, testified that he participated in the commander's hearing for Officer Sabel's case. He testified that there were two (2) categories that officers were placed in when determining what discipline was to be imposed. Officers *41 who reported for the storm and subsequently abandoned their posts were punished differently from those who did not report for the storm and later reported.
Chief Nicholas further testified that if an officer missed the storm, they were terminated if they missed 10 or more days of work; however, officers who were here for the storm and then missed 14 days of work were terminated. He further testified that there is a departmental regulation that requires officers not to leave the city or state without permission.
Officer Sabel contends that her termination is unjust because no other officers have been terminated for missing 14 days of work. She argues that in cases recently heard by this court that it has been shown that the Appointing Authority established a guideline whereby officers were suspended for thirty (30) days if there were absent from zero to seven days (7), and Officers who were absent from seven (7) to fourteen (14) days faced an increasingly larger suspension for each unauthorized day. Indeed, our court has been presented with such testimony; however, such testimony has only been produced in cases where officers reported to work and later abandoned their posts. See Alfred Harris v. Department of Police, XXXX-XXXX (La.App. 4 Cir. 12/12/07), 974 So.2d 45. As Chief Nicholas testified, officers who completely missed the storm and subsequently returned to work were faced with stiffer penalties.
Officer Sabel testified that this was not her first time serving as hurricane emergency personnel. Furthermore, as a police officer of 14 years, who is married to a 30-year NOPD veteran, Officer Sabel knew she was taking a huge risk in evacuating with her family to Houston on August 28, 2005. It is common knowledge to most New Orleanians that driving to Houston on the day before the landfall of a major hurricane involves making a commitment to endure substantial highway gridlock. A drive to Houston on the day before a hurricane from New Orleans is not a mere six (6) hour drive, but may be twice or three times the regular drive time. Officer Sabel did not even try to obtain permission from her superiors on August 28th just in case she was unable to timely return to the city. Additionally, the contra flow system that was in place to evacuate persons from the greater metropolitan area was well-known and publicized by the media. Therefore, we find Officer Sabel's argument that she believed that she could easily return to the city was without merit.
In making the decision to evacuate with her family, Officer Sabel gambled her chances of whether she would be able to return to duty timely. The loss of her Civil Service position is the cost of her poor decision-making. She impaired the efficiency of the public service by abandoning her post for a period of time crucial to the hurricane relief effort carried on by emergency personnel. Her punishment is not inconsistent with the schedule established by the Appointing Authority.
Therefore, we find her assignments of error to be without merit.

DECREE
For the foregoing reasons, the decision of the Civil Service Commission is affirmed.
AFFIRMED.
BAGNERIS, J., concurs.
BAGNERIS, J., concurs.
I concur with the majority; however, I find that while the Appellant's case has *42 merit, the Civil Service Commission was not manifestly erroneous in its finding.
NOTES
[1] August 29, 2005, is included in the Appointing Authority's calculation of missed days.