25 So.3d 858 (2009)
Monna MATHIEU
v.
NEW ORLEANS PUBLIC LIBRARY.
No. 2008-CA-1503.
Court of Appeal of Louisiana, Fourth Circuit.
August 5, 2009.
Opinion Granting Rehearing November 18, 2009.
*860 Brett J. Prendergast, New Orleans, LA, for Plaintiff/Appellant.
Penya Moses-Fields, City Attorney, Nolan P. Lambert, Chief Deputy City Attorney, Victor L. Papai, Jr., Assistant City Attorney, New Orleans, LA, for Defendant/Appellee.
(Court composed of Judge CHARLES R. JONES, Judge MICHAEL E. KIRBY, and Judge TERRI F. LOVE).
CHARLES R. JONES, Judge.
The Appellant, Monna Mathieu, appeals the decision of the Civil Service Commission which denied her appeal and upheld the decision of the Appointing Authority to suspend her and terminate her employment. We amend, and affirm as amended.
Ms. Mathieu is a civil service employee with permanent status who is employed by the New Orleans Public Library ("NOPL"). Her employment with the NOPL began when she was hired on August 29, 1983. She was appointed to her last classification, as a Management Services Supervisor, on April 27, 2003. As a Management Services Supervisor, she was the business manager for the NOPL.
The facts surrounding Ms. Mathieu's employment are slightly contested. The NOPL avers that Ms. Mathieu failed to properly perform required tasks and that said failure eventually led to the suspension and termination of her employment. The NOPL specifically alleges that Ms. Mathieu: untimely processed and paid bills and invoices beginning January 2007; failed to provide financial reports to the Library Committee beginning April 2006; and failed to obtain approval prior to submitting the 2008 budget for the NOPL. Her employment was suspended for five (5) days for failing to deposit checks paid to the NOPL from January 2007 to July 2007 and her employment was suspended for three (3) days for violating sick leave policy.
Ms. Mathieu asserts that as the business manager, her direct supervisor was the City Librarian, who is also the Director of the NOPL. Throughout her tenure, the position of the City Librarian was held by several individuals. Ms. Geraldine Harris served as Interim City Librarian/Director until November of 2006, at which time the position of City Librarian was vacant until the Public Library Board appointed Ms. Donna Schremser to the position on September 10, 2007. However, between November 2006 and September 10, 2007, Ms. Mathieu avers that Mr. Lance Query assumed the responsibilities of the City Librarian under the pretense of being a Special Consultant to the President of the Board of Administration of the Library. She further avers that in this position, Mr. Query did not have a contract with the Public Library Board nor did the Board ever pass any motions to confer any supervisory powers on Mr. Query.
After Ms. Schremser assumed the position of the City Librarian, the NOPL notified Ms. Mathieu of the termination and suspension of her employment for alleged infractions through correspondence dated November 15, 2007. Ms. Mathieu had a pristine disciplinary record prior to the incidents giving rise to this appeal.
Ms. Mathieu appealed her suspensions and termination to the New Orleans Civil *861 Service Commission ("CSC"), which upheld the decision of the NOPL and denied her appeal on October 6, 2008.[1] Ms. Mathieu timely filed the instant appeal from the CSC's decision.
Ms. Mathieu raises six (6) assignments of error on appeal:
1.) the CSC manifestly erred in concluding that Lance Query was Ms. Mathieu's superior or supervisor;
2.) the CSC erred in concluding that the Library Board President, Irvin Mayfield, had the authority to give Ms. Mathieu instructions;
3.) the CSC erred in failing to recognize the illegality of requiring Ms. Mathieu to perform work for a private corporationthe Library Committeeas a part of her city employment;
4.) the CSC manifestly erred in concluding that she violated past protocols in submitting the 2008 budget;
5.) the CSC manifestly erred in concluding that Ms. Mathieu failed to take action relative to the backlog of deposits: and
6.) the CSC manifestly erred in finding that Ms. Mathieu violated the sick leave policy and this impacted the efficiency of the service.
"The Library is a governmental institution administered by the City of New Orleans and subject to the pertinent state laws." Robbins v. New Orleans Public Library, 208 So.2d 25, 31 (La.App. 4.1968). In Robertson v. Department of Police, 07-0795, p. 6 (La.App. 4 Cir. 10/3/07), 968 So.2d 779, 782, we set forth the standard of review in civil service disciplinary cases as follows:
[T]he appellate court has a multifaceted standard of review. First, as in other civil matters, deference must be given to the factual findings made by the Commission, which should not be disturbed unless manifestly erroneous or clearly wrong. Second, in evaluating the Commission's determination as to whether the disciplinary action is both based on legal cause and commensurate with the infraction, the appellate court should not modify the Commission's order unless it is arbitrary, capricious, or characterized by an abuse of discretion. (citing Bannister v. Department of Streets, 95-404, p. 8 (La.1/16/96), 666 So.2d 641, 647 (citations omitted)).
Legal cause exists whenever the employee's conduct impairs the efficiency of the public service in which the employee is engaged. Cittadino v. Department of Police, 558 So.2d 1311, 1315 (La.App. 4 Cir.1990). A decision by the Civil Service Commission is "arbitrary or capricious" if there is no rational basis for the action taken by the Civil Service Commission. Bannister v. Department of Streets, 95-0404 (La.1/16/96), 666 So.2d 641, 647.
While we recognize that Ms. Mathieu raises several assignments of error, the majority of these assignments are not germane to an appellate review of whether her conduct impaired the efficiency of public service for the New Orleans Public Library. Even if we accept her argument that she did not have a City Librarian to report to, it would be unreasonable to assume that her alleged failure to perform the duties of her office cannot go unpunished because she did not have an immediate supervisor. Whether it was appropriate for the NOPL board to allow Mr. Query, as a volunteering consultant, to assume *862 the role of the City Librarian is not the issue before us. The ultimate question before us is whether Ms. Mathieu's actions and/or inactions impaired the efficiency of the NOPL. Thus, we pretermit discussing assignments of error one (1) through three (3) because they are not relevant to whether her conduct impaired the efficiency of public service for the NOPL.
The fourth assignment of error raised by Ms. Mathieu is that the CSC manifestly erred in concluding that she violated past protocols in submitting the 2008 budget. She avers that despite the CSC's decision that she was obligated to submit the 2008 budget to the City Librarian and the Library Board prior to its submission to the City Council, there is no evidence to support the CSC's position that this is a requirement. She further asserts that because there was not a City Librarian at the time, there was no one to submit the budget to for review and signature prior to submitting the budget to the City Council. Ms. Mathieu avers that it was not normal procedure for her to submit the budget to the Library Board prior to submitting the budget to the City Council.
The NOPL contends that Ms. Mathieu submitted the Library's 2008 budget in direct violation of protocol because she was required to submit the budget to the acting City Librarian for signatureMr. Queryand to obtain the approval of the Library Board. The NOPL asserts that she had followed said protocol for three years prior to this incident. As a result of her failure to follow protocol, the NOPL's personnel were unaware that the budget was submitted, and were forced to expend energy and resources to create a new budget only to discover that the work had already been done. The creation of additional and unnecessary work for the NOPL's staff impaired the efficiency of the library's operations and decreased the efficiency of the public service according to the NOPL.
Irvin Mayfield is the chairman of the NOPL board. He testified that he is number one in charge of the NOPL. He further testified that he was shocked by Ms. Mathieu's submission of the 2008 budget directly to the City Council. He testified that the procedure was for her to submit the budget to the NOPL board for approval prior to presenting the budget to the City Council. He further testified that Ms. Mathieu was never authorized by the NOPL board to present the budget to the City Council. He testified that her conduct made it necessary for other staff to prepare a budget and that said preparation took time because there was not a business manager available to give the staff direction on preparing the budget. In essence, Ms. Mathieu's conduct made the NOPL appear incompetent because, as Mr. Mayfield testified, the NOPL board looked as though it did not know what it was doing.
Additionally, included in the record are internal NOPL e-mails from NOPL staff who were trying to figure out how to prepare the 2008 budget. In an interoffice e-mail to members of the NOPL staff, Ms. Rica Trigsa NOPL employeeexpressed that the NOPL board did not see the budget submitted by Ms. Mathieu and mentioned that the budget is normally reviewed by the library administration and board prior to its submission to the City Council. Ms. Trigs testified to the same at Ms. Mathieu's Civil Service hearing.
In light of the exhibits and testimony introduced in the case sub judice, it is clear that Ms. Mathieu violated normal budgetary procedure; created extra and unnecessary work for her NOPL co-workers; and made the NOPL appear incompetent before the City Council. Thus, her *863 conduct impaired the efficiency of the public service within the NOPL. This assignment of error is without merit.
The fifth assignment of error raised by Ms. Mathieu is that the CSC manifestly erred in concluding that she failed to take action relative to the backlog of deposits. She avers that Cassandra Smith, her subordinate co-worker, testified that she (Ms. Mathieu) took steps to obtain additional help to address the backlog of checks which needed to be deposited from the business office, but her efforts were rejected by others in the Library. Ms. Mathieu asserts that she should not be disciplined for her office being understaffed when said understaffing was not due to her own fault.
The NOPL contends that it established through testimony and exhibits that Ms. Mathieu was responsible for depositing library funds. The NOPL further avers that Ms. Mathieu acknowledged that checks written to the NOPL were not deposited. It further asserts that Ms. Schremser testified that the delay in depositing checks resulted in some accounts being closed and caused other patron's accounts to become overdrawn.
We note that Ms. Smith testified that money remained uncounted for the business office from February 2007 to approximately August 2007, in a safe and a file cabinet in Ms. Mathieu's office. She testified that only Ms. Mathieu had the key to the safe. She testified that she would find checks on Ms. Mathieu's desk that had been written to the NOPL months earlier. She further testified that the NOPL would lose money when checks were deposited after checking accounts had already been closed. Additionally, the CSC observed that even Ms. Mathieu admitted that checks were not deposited, yet she failed to advise her supervisors that her office was too busy and understaffed to be able to get the checks deposited. Ms. Smith testified that Ms. Mathieu told her that she (Ms. Mathieu) had asked Mr. Query to hire someone to count the deposited money. Mr. Query testified that he offered Ms. Mathieu additional staff to assist her, but she did not follow-up on said offer.
Ms. Mathieu testified that pre-Katrina, there were ladies in her office who handled depositing checks and monies for her office, but post-Katrina the employees did not return and were not replaced. She further testified that it was not her responsibility to deposit the monies and that Ms. Smith was in charge of making deposits when she (Ms. Smith) was not handling her primary responsibility of dealing with accounts payable. Lastly, she testified that she had no idea that there were boxes of checks that had to be deposited because Ms. Smith received the checks and monies to be deposited.
Considering that Ms. Mathieu ran the business office for the NOPL and that Ms. Smith was her subordinate, the responsibility for ensuring that monies paid to the NOPL were deposited remained with Ms. Mathieu. The record reflects that post-Katrina Ms. Mathieu's responsibilities as Management Services Supervisor were augmented due to the loss of staff in her office; nevertheless, it was still her responsibility to ensure that monies paid to the NOPL were deposited. Her failure to deposit checks written to the NOPL impaired the efficiency of the public service in two ways: 1) the library was unable to receive payment on checks on closed accounts; and 2) patrons who wrote checks to the library suffered overdrawn accounts as a result of late deposits being made. One longtime patron even wrote the NOPL requesting that her check be found and deposited. Ms. Mathieu's failure to timely deposit checks caused the library to lose money, and adversely affected patrons *864 of the NOPL system. Thus, we find that this assignment of error is without merit.
The sixth assignment of error raised by Ms. Mathieu is that the CSC manifestly erred in finding that Ms. Mathieu violated the sick leave policy and that her absence impacted the efficiency of the service. She avers that the CSC erred in determining that Mr. Query was her supervisor and that she should have advised him that she was taking sick leave ahead of her first absence when he was not her superior. Lastly, she avers that no evidence was introduced to prove that her failure to advise Mr. Query of her leave impacted the operations of the library.
The NOPL contends that it established that Ms. Mathieu had knowledge of the proper sick leave procedures and did not follow them; thus, legal cause for her suspension was established.
Civil Service Rule VIII, Section 2.4 states:
An employee who has taken sick leave shall file with his or her appointing authority a letter stating the cause of the absence from work provided that:
a) If the amount of sick leave exceeds six (6) consecutive working days, a registered physician must verify to the nature of the illness or injury and the necessity for absence after the sixth consecutive day.
Upon our review of the record, we note that Ms. Mathieu submitted a note from her doctor to the NOPL's personnel office. The note simply stated that Ms. Mathieu would be under her doctor's care from July 11, 2007 to August 15, 2007. However, aside from her doctor's note, Ms. Mathieu herself did not prepare a letter to her Appointing Authority explaining why she would be taking an extended sick leave as required under the above-referenced rule. Her subordinate, Ms. Smith, testified that Ms. Mathieu did not even directly apprise her that she (Ms. Mathieu) was taking sick leave. Given Ms. Mathieu's failure to recognize Mr. Query as her immediate supervisor, there is still no plausible reason why she did not advise others of her absence, even a member of the NOPL board. Furthermore, her lengthy absence from her office, which she admits was understaffed, clearly impacted the productivity of the overall business management of the library. This assignment of error is without merit.
However, while we find that the CSC did not error in finding that Ms. Mathieu impaired the efficient operation of the NOPL, we also find that the penalty imposed herein, is too harsh, arbitrary and capricious. "In determining whether disciplinary action was based on good cause and whether the punishment was commensurate with the infraction, this court should not modify the Civil Service Commission order unless it was arbitrary, capricious, or characterized by an abuse of discretion." Cure v. Dept. of Police, 07-0166, p. 2 (La.App. 4 Cir. 8/1/07), 964 So.2d 1093, 1094-95. A decision is "arbitrary and capricious" if there is no rational basis for the CSC's action. Id. at p. 2, 964 So.2d at 1095. In consideration of Ms. Mathieu's twenty five years of employment with the NOPL and her lack of a disciplinary recordaside from the instant incidentswe find that termination of her employment is excessive. Further, the operation of the NOPL was less than stellar during this period, with short staff and no Director in place. Thus, we vacate the penalty of termination and impose a suspension of ninety (90) days without pay upon Ms. Mathieu, and order reinstatement thereafter.

DECREE
For the foregoing reasons, the decision of the Civil Service Commission is affirmed as amended.
*865 AMENDED AND AFFIRMED AS AMENDED.

ON APPLICATION FOR REHEARING
CHARLES R. JONES, Judge.
The Application for Rehearing filed by the New Orleans Public Library ("the NOPL") is granted for the limited purpose of clarifying an issue raised by the NOPL in its Application for Rehearing. The NOPL avers that our Court did not address the termination of Monna Mathieu for her unauthorized submission of the NOPL's 2008 budget to the City Council of New Orleans. For the reasons set forth herein, we maintain the decree rendered herein.
To insure clarity, this court does find that Ms. Mathieu's act of submitting the NOPL's budget to the City Council did impair the efficient operation of the NOPL. However, we find that the termination of Ms. Mathieu for this infraction and the others cited by the NOPL, to be harsh, arbitrary and capricious.
"In determining whether disciplinary action was based on good cause and whether the punishment was commensurate with the infraction, this court should not modify the Civil Service Commission order unless it was arbitrary, capricious, or characterized by an abuse of discretion." Cure v. Dept. of Police, 07-0166, p. 2 (La.App. 4 Cir. 8/1/07), 964 So.2d 1093, 1094-95. A decision is "arbitrary and capricious" if there is no rational basis for the CSC's action. Id. at p. 2, 964 So.2d at 1095. In consideration of Ms. Mathieu's twenty five years of employment with the NOPL and her lack of a disciplinary recordaside from the instant incidentswe find that termination of Ms. Mathieu's employment is excessive. Moreover, the overall operation of the NOPL was less than stellar during this post Hurricane Katrina period, with short staff and no Director of the NOPL in place. Thus, we vacate the penalty of termination for these infractions, and maintain our prior imposition of a suspension of ninety (90) days without pay upon Ms. Mathieu, and order reinstatement thereafter.

DECREE
For the foregoing reasons, we grant the application for rehearing of The New Orleans Public Library, and maintain the decree of this Court previously rendered.
APPLICATION FOR REHEARING GRANTED.
NOTES
[1] The CSC found one claim made by the NOPL to be meritless: the claim that Ms. Mathieu untimely paid library vendors.