50 So.3d 1259 (2010)
Monna MATHIEU
v.
NEW ORLEANS PUBLIC LIBRARY.
No. 2009-C-2746.
Supreme Court of Louisiana.
October 19, 2010.
Rehearing Denied December 10, 2010.
*1260 Victor L. Papai, II, Penya Marzula Moses-Fields, Mary Katherine Taylor, Nannette V. Joivette-Brown, Lambert & Lambert, Nolan P. Lambert, New Orleans, Martiny & Associates, LLC, Franz L. Zibilich, New Orleans, for Applicant.
Brett John Prendergast, New Orleans, for Respondent.
WEIMER, Justice.[1]
This matter is before the court for a determination of whether the court of appeal erred in reducing the disciplinary sanction of termination of an employee which had been imposed by the New Orleans Public Library (NOPL)[2] and upheld by the New Orleans Civil Service Commission (CSC). For reasons that follow, we hold the sanction of termination based on the facts and circumstances of this case was not arbitrary and capricious or characterized by an abuse of discretion, and we reverse the ruling of the court of appeal.

FACTS AND PROCEDURAL BACKGROUND
Monna Mathieu was a classified civil service employee with permanent status who had been employed by the City of New Orleans (City) in various capacities with several agencies since August 1983. On April 27, 2003, she was appointed to serve in a position classified as "Management Services Supervisor" for the NOPL. In that capacity she was the business manager for the NOPL, whose direct supervisor was the NOPL's City Librarian/Director. Mathieu worked under three different City Librarians/Directors prior to that position being vacant from November 2006 until September 2007, when Donna Schremser was appointed to fill the position.
During November 2007, the NOPL issued a disciplinary letter notifying Mathieu of the final disciplinary action terminating her for the following reasons: 1) untimely processing and payment of bills and invoices beginning in January 2007, 2) failure *1261 to provide financial reports to the Library Committee since April 2006, and 3) failure to obtain approval prior to submitting the NOPL's 2008 budget to the New Orleans City Council (City Council). The notification also indicated Mathieu was suspended for a period of five days for failure to deposit checks paid to the NOPL from January 2007 to July 2007 and was suspended for a period of three days for violation of the sick-leave policy. The letter contained notice of the right to appeal within 30 calendar days of the date of the letter.
Mathieu perfected an appeal to the CSC challenging the sanctions. In February 2008, a hearing was conducted over a three-day period, during which the CSC hearing examiner heard testimony from Mathieu, as well as a number of individuals employed by NOPL or associated with the Library Board and the Library Committee.[3]
After the hearing, the CSC hearing examiner found the appointing authority failed to provide any evidence that the charge related to the untimely payment of bills and invoices was caused by the untimely processing of bills and invoices by Mathieu or her subordinates; based on the lack of evidence, the hearing examiner recommended that charge be dismissed.
However, the hearing examiner recommended that the decision of the NOPL to terminate Mathieu's employment be upheld on grounds related to (1) the financial reports and (2) the budget, finding those charges were sufficiently established. Based on these findings, the CSC rendered a decision in conformity with the hearing examiner's report, thus, refusing to disturb the termination of Mathieu's employment, the five-day suspension, or the three-day suspension.
Mathieu appealed that decision to the court of appeal, challenging the grounds for termination of employment and the grounds for the two suspensions.[4]Mathieu v. New Orleans Public Library, 08-1503, p. 3 (La.App. 4 Cir. 8/5/09), 25 So.3d 858, 861.
The appellate court determined the ultimate question to be decided was whether Mathieu's actions and/or inactions impaired the efficiency of the NOPL. Mathieu, 08-1503 at 4, 25 So.3d at 862. The court of appeal found the CSC did not err in finding Mathieu impaired the efficient operation of the NOPL. However, the appellate court found the penalty imposed by the NOPL was "too harsh, arbitrary, and capricious." Mathieu, 08-1503 at 9, 25 So.3d at 864. The court vacated the penalty of termination and imposed a 90-day suspension without pay, ordering reinstatement thereafter. Mathieu, 08-1503 at 9-10, 25 So.3d at 864.
*1262 The NOPL sought a rehearing, which the court of appeal granted for the limited purpose of clarifying an issue raised regarding Mathieu's unauthorized submission of the NOPL's 2008 budget to the City Council. On rehearing, the court found Mathieu's act of submitting the NOPL's budget directly to the City Council impaired the efficient operation of the NOPL. However, the court found the termination of Mathieu's employment for this infraction and others cited by the NOPL was "too harsh, arbitrary, and capricious." On rehearing, the court maintained the decree of suspension for 90 days without pay which had been rendered previously. Mathieu, 08-1503 at 2, 25 So.3d at 865.
NOPL's application for writ of review to this court was granted. Mathieu v. New Orleans Public Library, 00-2746 (La.4/23/10), 32 So.3d 809. The only issue before this court is whether the termination of Mathieu's employment was arbitrary and capricious or characterized by an abuse of discretion.[5]

DISCUSSION
Civil service provisions in the state constitution and the rules of the civil service commission are designed to protect career public employees from political discrimination by eliminating the "spoils" system. See La. Const. art. X, § 1, et seq.; Bannister v. Department of Streets, 95-0404, p. 4 (La. 1/16/96), 666 So.2d 641, 645. Civil service laws and rules establish a system under which "non-policy forming" public employees are selected on the basis of merit and can be discharged only for insubordination, incompetency, or improper conduct. Bannister, 95-0404 at 4-5, 666 So.2d at 645.
Equally as important as protection of the employees is the appointing authority's duty to undertake disciplinary action against an employee for legal cause that impairs the efficiency of the public service. Just as great an injustice may arise from suffering the continuance of incompetent or insubordinate classified civil service employees in their positions as from wrongfully terminating the permanently classified civil service employee. Both concerns are fundamental to the purpose of the civil service merit system. Bannister, 95-0404 at 7, 666 So.2d at 646.
Employees with permanent status may be disciplined only for cause expressed in writing. La. Const. art. X, § 8(A). "Cause" for dismissal of such a person includes conduct prejudicial to the public service involved or detrimental to its efficient operation. Bannister, 95-0404 at 8, 666 So.2d at 647; Walters v. Department of Police of the City of New Orleans, 454 So.2d 106, 113 (La.1984).
Appellate courts reviewing civil service disciplinary cases are presented with a multifaceted review function. Bannister, 95-0404 at 8, 666 So.2d at 647; Walters, 454 So.2d at 113. Initially, deference should be given to the factual conclusions of the civil service commission. A reviewing court should apply the clearly wrong or manifest error rule prescribed generally for appellate review. Bannister, 95-0404 at 8, 666 So.2d at 647; Walters, 454 So.2d at 114. Then, the court must evaluate the commission's imposition of a particular disciplinary action to determine if it is both based on legal cause and is commensurate with the infraction; the court should not modify the commission's *1263 order unless it is arbitrary, capricious, or characterized by abuse of discretion. Id. "Arbitrary or capricious" means the absence of a rational basis for the action taken, Bannister, 95-0404 at 8, 666 So.2d at 647; "abuse of discretion" generally results from a conclusion reached capriciously or in an arbitrary manner, Burst v. Board of Commissioners, Port of New Orleans, 93-2069, p. 5 (La.App. 1 Cir. 10/7/94), 646 So.2d 955, 958.
We acknowledge that the accusations against Mathieu for failure to provide financial reports to the Library Committee and failure to obtain approval of the Library Board of the proposed 2008 budget prior to submission to the City Council are potentially serious accusations, either of which could result in the sanction of termination if based on evidence of record and balanced against any mitigating circumstances.
Regarding the financial reports, the pertinent portion of the November 15, 2007 notice of termination issued to Mathieu by the City Librarian/Director stated:
Unwillingness to Perform Assigned Duties. You were asked by Lance Query[[6]] and Board Chair Irvin Mayfield to provide consistent [financial] reports to the Library Committee. You have failed to provide any financial reports since April 2006 which violated the Cooperative Endeavor Agreement between the City and the Library Committee. You were further instructed to give the completion of the data the highest priority. To[]date, we have not received the requested data and the continuous delay has prevented the Library Committee from a timely submission of the tax returns. I find this to be an infraction that warrants termination.
Testimony at the hearing established the Library Committee is a non-profit corporation originally formed to receive money to fund a campaign for a millage increase for the library. The entity's status as a Sec. 501(C)(3)[7] non-profit organization pursuant to Title 26 of the Internal Revenue Code enables library patrons to make tax-deductible donations which flow to the library. Additionally, the Library Committee owns and maintains copy machines in the branch libraries. According to the Library Committee president, Ruth McCusker, the funds raised from the use of the copy machines at times have amounted to as much as or more than $40,000 per year; these monies are allocated to the upkeep and replacement of the machines. The Library Committee also provides other financial support for the NOPL.
McCusker testified that as a Sec. 501(C)(3) non-profit association, the Library Committee was required to file annual federal tax returns. Part of the information needed for those returns was the amount of income derived from the copy machines. She explained that the money was collected at the various branches, counted, sealed, and sent to the main *1264 branch; at the main branch the money was counted again, accounted for, and deposited in the bank by the library staff. As part of these money-management functions, the Library Committee was sent monthly reports, which were in turn reported to the board of the Library Committee. All of these tasks were ultimately the responsibility of Mathieu in her capacity as business manager for the NOPL.
This working agreement between the Library Committee and the main branch library staff, which included the NOPL Business Office, had been in place for years, according to McCusker. She specified that the NOPL Business Office, eventually headed by Mathieu, handled all of the Library Committee's money in the same way that the Library Board's accounts were handled, except the funds were kept as a separate item. The Business Office would prepare a monthly statement that informed the Library Committee what monies had been taken in and what was in the bank. Originally, the person in the Business Office who performed that function was John Duffle; eventually, Mathieu took Duffle's place. Mathieu confirmed that she kept the Library Committee's checkbook in her desk along with two other library checkbooks. Mathieu would verify the invoices for which she prepared the checks, record the checks, and transmit the unsigned checks for dual signatures of Library Committee members. The Library Committee's separate bank account provided the basis for the monthly financial reports.
According to testimony at the hearing, the City and the Library Committee formalized the working agreement by confecting a written Cooperative Endeavor Agreement whereby the NOPL would provide "administrative, bookkeeping, and other support services for Committee operations according to justified need or usefulness in the Library['s] interest approved by the City Librarian." The agreement was signed by the mayor on behalf of the City and covered the period from July 1, 2005, to June 30, 2006. Mathieu testified she was "instrumental" in getting this agreement confected. Although the attachment to the agreement provided the agreement could be extended beyond June 30, 2006, at the option of the City, provided funds were allocated by the City Council, there is no evidence of record indicating the City exercised the option to extend the agreement beyond the one year covered by the written agreement or that the City Council allocated funds for that purpose. Testimony elicited at the hearing indicated there were no other written agreements signed following the initial one in 2005. Thus, after the term of the written Cooperative Endeavor Agreement expired on June 30, 2006, the NOPL and the Library Committee reverted to the working agreement that was in place prior to July 1, 2005.
At the hearing conducted on February 28, 2008, McCusker testified that subsequent to April of 2006, when she received about six months of reports at one time, the Library Committee received no financial reports from Mathieu, despite McCusker having requested same through the City Librarian/Director or through the Library Board. Therefore, the Library Committee was unable to file its tax return for the year 2006. In her testimony, Mathieu confirmed that she had failed to provide the Library Committee with monthly reports for the 2006 calendar year.[8] Reconciling the statements by *1265 McCusker and Mathieu, it would not be manifestly erroneous for the CSC to conclude that the six monthly reports received in April of 2006 were for 2005. Thus, Mathieu failed to provide monthly reports for January through June of 2006, a period of time in which the Cooperative Endeavor Agreement was in effect.[9] As a reason for her departure from the routine reporting she had provided since 2003, Mathieu referenced to the reduction in staff following Hurricane Katrina.
The court of appeal held the CSC did not err in finding Mathieu's actions and/or inactions related to the financial reports impaired the efficient operation of the NOPL, a finding Mathieu has not challenged. Following that determination, the court of appeal was required to make a determination regarding the penalty. As previously stated, the reviewing court engages in a two-step process evaluating the CSC's determination as to whether the disciplinary action is both based on legal cause and, if so, whether the discipline is commensurate with the infraction. The court should not modify the CSC's order unless it is arbitrary, capricious, or characterized by abuse of discretion. See Bannister, 95-0404 at 8, 666 So.2d at 647; Walters, 454 So.2d at 114.
The appellate court found the penalty imposed was "too harsh, arbitrary, and capricious." The court considered the fact that Mathieu had worked for the City for 25 years with no prior disciplinary record. In addition, the court noted the operation of the NOPL was less than stellar during the period of the alleged charges, with a shortage of personnel and no City Librarian/Director in place.[10] The court of appeal vacated the penalty of termination and imposed a 90-day suspension without pay, ordering reinstatement thereafter.
Although the finding that Mathieu's behavior impaired the efficiency of public service has not been challenged by Mathieu, who did not apply for a writ of review to this court on that issue, the evaluation or lack thereof by the court of appeal of the extent of the impairment and the severity of its effect has been raised by the NOPL's assertions that the court of appeal erred in reducing the penalty of termination.
We agree with the NOPL that the court of appeal was erroneous in finding the penalty of termination was arbitrary and capricious and, thus, the court of appeal erred in reducing the penalty. Mathieu asserts to this court that it would have been "payroll fraud for ... Mathieu to work on Library time for a non-City corporation which did not have a valid cooperative endeavor agreement with the City or the Library."
To consider this issue, we turn, as we must, to the wording of pertinent provisions in the Louisiana Constitution of 1974. Article 7, Section 14 is entitled "Donation, Loan, or Pledge of Public Credit" and begins with a general prohibition, as follows:
(A) Prohibited Uses. Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or *1266 donated to or for any person, association, or corporation, public or private. Except as otherwise provided in this Section, neither the state nor a political subdivision shall subscribe to or purchase the stock of a corporation or association or for any private enterprise.
This provision is followed with specifications of "Authorized Uses" in paragraph (B) and an exception from the prohibition for "Cooperative Endeavors" in paragraph (C). The latter states:
Cooperative Endeavors. For a public purpose, the state and its political subdivisions or political corporations may engage in cooperative endeavors with each other, with the United States or its agencies, or with any public or private association, corporation, or individual.
In the instant case, the evidence clearly shows that the NOPL had performed administrative/bookkeeping services for the Library Committee prior to Mathieu's employment as Management Services Supervisor. The testimony at the hearing was that after the millage election, the Library Board decided to keep the Library Committee in place as a separate entity to handle functions such as tax-exempt donations; it then became the duty of the Management Services Supervisor, formerly John Duffle, to perform the "administrative, bookkeeping, and other support services" later specified in the written cooperative endeavor agreement confected for the 2005-2006 period. The record is clear that the Library Committee existed to support the public libraries and provided invaluable financial support to the libraries, thus justifying the cooperative endeavor agreement.
Mathieu's argument that her providing financial reports to the Library Committee after the expiration of the written cooperative endeavor agreement could be payroll fraud is clearly untenable. The fallacy in Mathieu's argument that the expiration of the written Cooperative Endeavor Agreement "excused" her from providing the written reports is that she actually failed to perform the services required of her during the months that the written agreement was in place. Considering Mathieu's testimony that she did not provide any written reports for 2006, it is apparent that the failure to provide monthly reports for January through June of 2006 was a breach of the NOPL's contractual obligations to the Library Committee during the term of the Cooperative Endeavor Agreement. Although Mathieu now persists in making the payroll-fraud argument, the fact is she did not perform the required tasks during a portion of the term of the Cooperative Endeavor Agreement. Thus, the expiration of the written contract could not mitigate or negate Mathieu's failure to perform her employment requirements pursuant to the Cooperative Endeavor Agreement that she was "instrumental" in confecting. The record contains no evidence she advised anyone that it would be inappropriate to prepare the financial reports following the expiration of the written Cooperative Endeavor Agreement. Based on the record, this argument seems an after-the-fact excuse for failing to perform her job responsibilities.
Similarly, Mathieu's challenge to the authority of volunteer Lance Query to request that she provide the overdue financial reports to the Library Committee and consider the task a priority was made after the fact and is without merit. The vacancy in the position of City Librarian/Director existed from November 2006 to September 2007. Query did not make his email request that Mathieu prioritize the preparation of the financial reports until May of 2007, more than a year after Mathieu unilaterally decided not to make the monthly reports and, thus, breached the City's *1267 agreement to provide "administrative, bookkeeping, and other support services" as stated in the Cooperative Endeavor Agreement. Query's volunteer status did not provide grounds for Mathieu to ignore her obligation to the Library Committee. Clearly, because she was not the Director, Mathieu was obligated to report to someone who was above her in the organization. Query testified that he dealt with Mathieu during the months he worked with the NOPL on a voluntary basis, particularly concerning the belated payment of invoices. There was no testimony that Mathieu challenged Query's authority prior to her termination.
In light of these considerations, this court finds that the CSC was not arbitrary and capricious in its approval of the appointing authority's imposition of the sanction of termination of employment for failure to provide the financial reports to the Library Committee; the CSC had a rational basis for approving the termination. In its decision rendered October 6, 2008, the CSC specified that the appointing authority established Mathieu "failed to complete a specific task that was given to her as a priority.... [T]he task was important, and her failure to perform the task undermined the efficient operation of the library." The CSC noted that the Library Committee clearly served a very important function within the NOPL; the CSC concluded Mathieu's unilateral decision to ignore what her superiors considered an important task demonstrated that she was "ill-suited for her position; especially with the added responsibilities that resulted from the [reduction in forces] caused by Hurricane Katrina."
The CSC noted in its decision that none of Mathieu's "excuses" for failing to make the reports "mitigated her misconduct." According to Mathieu's testimony those "excuses" were two-fold: the lack of adequate personnel in the Business Office and the health problems she incurred during the time period involved. Although Mathieu testified she complained about the lack of staff after Hurricane Katrina, Mathieu introduced no evidence to corroborate the fact that she took steps, as a business manager, to seek remedies for the short staff. Likewise, she entered no medical records to support her claim of medical problems. Consistent with Mathieu's lack of defense to the charges against her is her decision to acquiesce in the appellate court's findings that the four infractions were established by the appointing authority: 1) failure to provide financial reports; 2) failure to get approval of the 2008 budget; 3) failure to account for and deposit funds; and 4) failure to follow sick-leave procedure. These infractions are aggravating factors that outweigh the mitigating circumstances noted by the court of appeal. These infractions provide a rational basis for concluding the imposition of the sanction of termination was not arbitrary and capricious.
Thus, we conclude the mitigating factors are insufficient to justify departure from the penalty imposed when contrasted with the gravity of the "insubordination, incompetency, and improper conduct" exhibited by Mathieu in her position of Management Services Supervisor for NOPL from January 2006 through August 2007.[11]See Bannister, *1268 95-0404 at 4-5, 666 So.2d at 645. Consequently, the sanction of termination imposed by the appointing authority and upheld by the CSC was not arbitrary and capricious and was not characterized by an abuse of discretion.[12]
Having decided to uphold the sanction of termination as a result of the actions related to the financial statements, it is unnecessary for this court to address the issues related to the 2008 budget. Consequently, we pretermit any discussion concerning issues related to the budget. Upon finding there is one ground for termination, the consideration of a second ground becomes superfluous.

CONCLUSION
Each case must be decided on its own facts with substantial deference afforded to the appointing authority. Reviewing courts should not second guess the appointing authority's decision, but only intervene when decisions are arbitrary and capricious or characterized by an abuse of discretion. See Bannister, 95-0404 at 8, 666 So.2d at 647.
The decision of the court of appeal imposing a 90-day suspension is reversed and the sanction of termination upheld by the New Orleans Civil Service Commission is reinstated.
REVERSED IN PART; TERMINATION REINSTATED.
JOHNSON and KNOLL, JJ., dissent and assigns reasons.
JOHNSON, Justice, dissents and assigns reasons.
I respectfully dissent. I doubt there is any place in the world where the name "Hurricane Katrina" does not conjure up terrible images of death and destruction. It is ludicrous then, to suggest that the NOPL system continued to function in a normal fashion post-Katrina. To the contrary, in addition to the destruction and damage to numerous library buildings, Ms. Mathieu was working in an extremely short-staffed office, and operating without the direction of an immediate supervisor, as the City Librarian/Director position was vacant from November 2006 until September 2007. Hurricane Katrina had a devastating impact on the City of New Orleans, resulting in chaos and dysfunction in the operation of City government, departments and services. There is no question that, during the relevant time frame, the NOPL was still in a state of disarray and not fully functioning. I find these conditions contributed to Ms. Mathieu's actions which led to the disciplinary action.
The majority finds justification for termination based solely on Ms. Mathieu's failure to provide financial reports to the Library Committee, but fails to fully consider mitigating circumstances in determining whether termination is justified. Ms. Mathieu did not dispute that she was asked to prepare the requested financial reports, nor that Mr. Query asked her to prioritize the report. However, she stated that everything arising during this time period was a priority. In addition to working on preparing the NOPL budget, Ms. Mathieu testified she was also faced with new responsibilities following Hurricane Katrina, such as work orders from FEMA, processing or administration of grants, and increased volume of invoices to process due to increased spending by the *1269 chief librarians. Thus, Ms. Mathieu was dealing with an increased work load with a decreased staff, all while working within a NOPL system that was dysfunctional.
In my view, Ms. Mathieu did an adequate job in prioritizing her normal work responsibilities, and her new responsibilities resulting from the aftermath of Hurricane Katrina. At the time she was terminated, Ms. Mathieu had been a city employee for almost 25 years, and a library employee for over four years. In her long tenure as a city employee, she had an unblemished work record, and had never been subject to discipline prior to the incidents involved in this matter. Given the chaos and destruction at every level of city government, I find it impossible to properly consider this case without fully considering these mitigating factors when determining whether termination was excessive.
Our courts have taken note of mitigating circumstances when determining whether an appointing authority's action is arbitrary and capricious. The majority concludes that the mitigating factors are insufficient to justify departure from termination given Ms. Mathieu's "insubordinate, incompetency and improper conduct." However, I must point out other cases where the courts have considered the effects of Hurricane Katrina in employment cases. Even first responders, who necessarily have a heightened responsibility in emergency conditions, were able to point to effects of the Hurricane on their job performance. To suggest that Ms. Mathieu, as an office worker, is not entitled to the same consideration, is untenable.
In Bankston v. Department of Fire, 2009-1016 (La.App. 4 Cir. 11/18/09); 26 So.3d 815, the court of appeal found that a firefighter's failure to report for duty after receiving notification of an emergency activation due to Hurricane Gustav constituted a real and substantial risk to the fire department. Notwithstanding, the court reduced a 90-day suspension imposed by the Department, and upheld by the Commission, to a 30-day suspension. The court reasoned that the CSC's decision was arbitrary and excessive when considering the presence of mitigating circumstances (employee's constant contact with his superiors and state police to determine when the roads would re-open).
In Fascio v. Department of Police, 2008-1127 (La.App. 4 Cir. 4/1/09); 9 So.3d 1029, the Fourth Circuit agreed with the CSC that Officer Fascio should have been disciplined for leaving his post and neglecting his duties during Hurricane Katrina. However, the court reduced a 30-day suspension imposed by the Department, and upheld by the CSC, to a 12-day suspension. The court reasoned that a mechanical punishment scale failed to take into account mitigating circumstances and thus the CSC upholding of the discipline was arbitrary and excessive.
In Hines v. Department of Police, 2006-1218 (La.App. 4 Cir. 12/19/07); 974 So.2d 87, the court of appeal agreed with the CSC that Lieutenant Hines neglected his duties by leaving the city of New Orleans after Hurricane Katrina. Nevertheless, the court reduced a termination imposed by the Department, and upheld by the CSC, to a demotion and a 30-day suspension. The court reasoned that termination was excessive considering the employee's 23 years of employment with the Department, his unblemished service record and his relatively quick return to the city following his departure.
In each of those cases, the court of appeal determined that the employee's actions impaired the efficiency of the public service and that disciplinary action was warranted. However, the court of appeal *1270 went on to consider whether the disciplinary actions were commensurate with the infraction or whether they were arbitrary and capricious.
Ms. Mathieu's failure to provide financial reports to the NOPL must be examined in the context in which her inaction occurred. Given Ms. Mathieu's long employment history with the City of New Orleans, the absence of a prior disciplinary record, the overall dysfunction of NOPL following Hurricane Katrina, particularly the short staff and absence of a Director, I find that termination was an excessive penalty, and not commensurate with the infraction. Contrary to the majority, I find the sanction of termination to be arbitrary and capricious, and I find the court of appeal correctly reduced Ms. Mathieu's penalty to 90 days suspension.
KNOLL, Justice, dissenting.
In reversing the Court of Appeal's judgment, the majority concludes the sanction of termination based on the facts and circumstances of this case was not arbitrary and capricious or characterized by an abuse of discretion. However, in reaching this conclusion, the majority opinion fails to engage in an analysis of whether the penalty was arbitrary and capricious. Rather the majority focuses upon the misconduct, even though the only issue before this Court is whether there was a rational basis for the disciplinary action taken. See Bannister v. Dept. of Streets, 95-0404, p. 8 (La.1/16/96), 666 So.2d 641, 647.
In my view, a proper analysis of the issue would balance the accusations of misconduct against the substantial mitigating circumstances,[1] namely Mrs. Mathieu's unblemished twenty-five-year employment record with the City of New Orleans and most importantly, the overall operation of the NOPL, including the lack of appropriate and necessary staffing, during the post-Hurricane Katrina time period involved, i.e., January through June of 2006.
It is important in this case to recall that on the morning of Monday, August 29, 2005, Hurricane Katrina made landfall as a Category 3 storm in southeast Louisiana, triggering the catastrophic failure of some of New Orleans's levee systems, which flooded close to eighty percent of the city. With flood waters lingering for weeks and the annihilation of coastal cities and parishes, the damages wrought by this storm totaled over eighty-one billion dollars.
Few would dispute the repercussions of this storm, which was one of the deadliest hurricanes in U.S. history claiming 1,836 lives, are still felt in the city today, but were most prevalent in the year following its landfall. Simply put, the city was in turmoil and has not fully recover even with *1271 the passage of five years. I take judicial notice of the wide-spread closure of the city's court systems, schools, medical institutions, government offices, and businesses, as well as the mandated, city and parish-wide evacuation of its citizens.
Significantly, there is no record evidence to indicate the NOPL was somehow miraculously unaffected by the costliest natural disaster in our nation's history. Consequently, unlike the majority opinion, which examines the misconduct in a vacuum detached from reality, I find a proper examination of Mrs. Mathieu's misconduct and the punishment imposed must take into serious consideration this catastrophe and its crippling effects on the city.
Therefore, in my view, the Court of Appeal correctly found the penalty imposed herein is too harsh, arbitrary, and capricious, and termination is not commensurate with the infraction, given the overwhelming mitigating circumstances preventing the return to "business as usual."[2] For these reasons, I respectfully dissent.
NOTES
[1] Retired Judge Philip Ciaccio, assigned as Justice ad hoc, sitting for Chief Justice Catherine Kimball.
[2] The NOPL is a governmental institution under the auspices of the City of New Orleans and is subject to pertinent laws, such as constitutional, statutory, and regulatory provisions pertaining to civil service. See Robhins v. New Orleans Public Library, 208 So.2d 25, 31 (La.App. 4 Cir. 1968).
[3] The Library Board is a Board of the City of New Orleans charged with operating the City's public library system. The Library Committee is a private, non-profit organization which supports the city libraries and operates, in part, from revenue generated by copy machines in the library branches.
[4] In her argument to the court of appeal challenging the termination for failure to provide the Library Committee with the financial reports, Mathieu specified the following errors: 1) the CSC manifestly erred in concluding that Lance Query was her superior or supervisor, 2) the CSC erred in concluding the president of the Library Board had the authority to give her instructions, 3) the CSC erred in failing to recognize the illegality of requiring her to perform work for a private corporation (the Library Committee) as a part of her city employment. The appellate court pretermitted discussion of those assignments of error because they were not relevant to whether Mathieu's conduct impaired the efficiency of public service for the NOPL. Mathieu, 08-1503 at 4, 25 So.3d at 862.
[5] Mathieu did not apply for supervisory writ of review; thus, the court of appeal's determination that her actions and/or inactions impaired the efficiency of the NOPL is final and not before this court. Likewise, she did not seek review of the penalty imposed by the court of appeal.
[6] When a vacancy occurred in the position of City Librarian/Director in November 2006, Lance Query was approached by the previous president of the Library Board for assistance in finding someone to serve as interim director of the NOPL. The person Query recommended declined the offer. However, Query generously volunteered on a pro bono basis to work with the library 10 to 12 hours a week while he maintained full-time employment elsewhere. Query made the request to Mathieu for the 2006 reports during May 2007, after being contacted by the president of the Library Committee.
[7] This designation, which results in various tax exemptions, is reserved, in part, for "[c]orporations ... organized and operated exclusively for ... literary, or educational purposes."
[8] Although she claimed to have prepared the 2006 reports some time in 2007 and left them on her desk after her termination, there is nothing in the record to support this testimony; apparently the CSC rejected this testimony.
[9] When asked on direct examination whether she had given the Library Committee reports for 2006, Mathieu answered, "No." Even if the time frame is limited to the period following April 2006, the financial reports were not submitted for two months while the Cooperative Endeavor Agreement was in effect.
[10] Indeed, the evidence indicates a series of City Librarians/Directors served for short periods of time; at the time of the repeated requests in 2007 by the Library Committee for Mathieu to provide the financial reports, there was no City Librarian/Director.
[11] We note there was substantial testimony concerning the charge of failure to deposit checks for six months during 2007. Mathieu's own testimony is descriptive of a seriously dysfunctional financial office in which currency and checks were stacked in a safe until that was completely filled; thereafter, more currency and checks were stored by her in a file cabinet that could be locked. All the while, these funds were left uncounted and unaccounted for by Mathieu.

We observe that the sanction of a five-day suspension for this improper management of the NOPL's financial affairs might be considered rather lenient.
[12] While we may agree with the court of appeal that the decision to terminate may be "harsh," that is not the test.
[1] See Fascio v. Dept. of Police, 08-1127, pp. 4-5 (La.App. 4 Cir. 4/1/09), 9 So.3d 1029, 1032 (reducing thirty-day suspension to twelve days, despite finding officer had neglected duties; noting application of mechanical penalty schedule arbitrarily failed to account for mitigating circumstances); Hines v. Dept. of Police, 06-1218, pp. 12-13 (La.App. 4 Cir. 12/19/07), 974 So.2d 87, 94 (reducing termination to demotion and 30-day suspension, despite finding officer neglected duties, citing employee's twenty-three years of employment, unblemished service record, and relatively quick return after Hurricane Katrina); Deshotel v. Dept. of Police, 07-0363, pp. 5-6 (La. App. 4 Cir. 10/24/07), 970 So.2d 1106, 1109 (affirming reduction of a forty-five day suspension for an officer who left after Hurricane Katrina to obtain medicine for elderly mother); see contra, Shepack v. New Orleans Police Dept., 00-1345, p. 4 (La.App. 4 Cir. 5/16/01), 791 So.2d 733, 736 (holding "[w]here there is a sufficient basis for the imposition of the disciplinary action, the Civil Service Commission may not substitute its judgment of what the proper penalty should be for the penalty imposed by the appointing authority based on what the Civil Service Commission perceives to be mitigating factors").
[2] Notably, the study of recent Fourth Circuit jurisprudence reveals a trend wherein the court has taken into consideration mitigating factors in its review of employee termination cases post-Hurricane Katrina, whereas prior to the storm, the court did not consider mitigation in such reviews. See supra note 1.