| | | |
|---|---|---|
| SADRA HAMILTON | * | NO. 2025-CA-0640 |
| VERSUS | * | |
| | | COURT OF APPEAL |
| SEWERAGE & WATER | * | |
| BOARD OF NEW ORLEANS | | FOURTH CIRCUIT |
| | * | |
| | | STATE OF LOUISIANA |

* * * * * * *

APPEAL FROM
CITY CIVIL SERVICE COMMISSION ORLEANS
NO. 9573
Hearing Examiner Imtiaz A. Siddiqui
* * * * * *
**Judge Rosemary Ledet**
* * * * * *

(Court composed of Judge Rosemary Ledet, Judge Dale N. Atkins, Judge Nakisha Ervin-Knott)

Russell B. Ramsey
RUSSELL B. RAMSEY, L.L.C.
7444 Boyce Dr.
Baton Rouge, LA 70809

      COUNSEL FOR PLAINTIFF/APPELLEE

Ashley Ian Smith
ASSISTANT SPECIAL COUNSEL
SEWERAGE AND WATER BOARD OF NEW ORLEANS
625 St. Joseph Street, Room 201
New Orleans, LA 70165

      COUNSEL FOR DEFENDANT/APPELLANT

           **AFFIRMED**
           **March 10, 2026**

*RML*
*DNA*
*NEK*

This appeal arises from the termination of Sadra Hamilton ("Ms. Hamilton") by the Sewerage and Water Board of New Orleans ("Board"), also known as the Appointing Authority, for an alleged violation of its workplace violence policy. Ms. Hamilton's appeal was reviewed by the Civil Service Commission ("Commission"), and she was reinstated with all backpay and emoluments. The Board now appeals.

We find the Commission's factual findings were not manifestly erroneous, and its decision to reinstate Ms. Hamilton was not arbitrary or capricious, given the Board failed to meet its burden of proof. The Commission's decision is affirmed.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Ms. Hamilton[1] was employed as a supervisor in the Board's billing department on October 12, 2023, when Lanitra Neveaux ("Ms. Neveaux"), a subordinate, probationary employee, aggressively approached Ms. Hamilton while yelling expletives and insults. Ms. Neveaux was restrained from reaching Ms.

---

[1] Ms. Hamilton was a permanent classified employee hired in 2011.

1

Hamilton by other co-workers. In response, Ms. Hamilton, the Board alleges, picked up a pair of scissors and made "stabbing" motions towards Ms. Neveaux. As a result, and based on the workplace violence prevention policy, the Board terminated Ms. Hamilton effective March 8, 2024.

Ms. Hamilton appealed to the Commission. The Commission found the Board failed to meet the burden of proof and reinstated Ms. Hamilton with backpay and emoluments. The Board's appeal followed.

## STANDARD OF REVIEW

We previously outlined the review of Commission decisions as follows:

> The CSC's final decision is "subject to review on any question of law or fact upon appeal to the court of appeal wherein the commission is located." LA. CONST., ART X, § 12(A). An appeal from a final decision of the CSC, thus, is to this court. When a CSC decision is appealed to this court, the applicable standard of review is as follows:
>
> • Appellate courts review civil service cases applying a mixed standard of review, depending on the nature of the issue being addressed. *Pitre v. Dep't of Fire*, 21-0632, p. 7 (La. App. 4 Cir. 4/20/22), 338 So.3d 70, 75 (citing *Russell v. Mosquito Control Bd.*, 06-0346, pp. 7-8 (La. App. 4 Cir. 9/27/06), 941 So.2d 634, 639-40).
>
> • On factual issues, deference should be given to the CSC's factual conclusions. "A reviewing court should apply the clearly wrong or manifest error rule prescribed generally for appellate review." *Mathieu v. New Orleans Pub. Library*, 09-2746, p. 5 (La. 10/19/10), 50 So.3d 1259, 1262 (citation omitted).
>
> • On legal issues, an appellate court in CSC cases applies a *de novo* standard of review. "When the civil service board has committed a reversible legal error, the reviewing court should make its own *de novo* review of the record and render a judgment on the merits, if possible. A legal error occurs when the lower court applies incorrect principles of law and such errors are prejudicial." *Voltolina v. City of Kenner*, 20-151, pp. 4-5 (La. App. 5 Cir. 12/2/20), 306 So.3d 640, 644 (internal citations omitted).

2

• On mixed factual and legal issue[s], the manifest error standard of review applies. In CSC cases, as in other civil cases, mixed questions of law and fact are reviewed under the manifest error standard. *Russell*, 06-0346, p. 8, 941 So.2d at 640 (observing that "a mixed question of fact and law should be accorded great deference by appellate courts under the manifest error standard of review") (citation omitted).

• "Then, the court must evaluate the commission's imposition of a particular disciplinary action to determine if it is both based on legal cause and is commensurate with the infraction; the court should not modify the commission's order unless it is arbitrary, capricious, or characterized by abuse of discretion. 'Arbitrary or capricious' means the absence of a rational basis for the action taken; 'abuse of discretion' generally results from a conclusion reached capriciously or in an arbitrary manner." *Mathieu*, 09-2746, pp. 5-6, 50 So.3d at 1262-63 (internal citations omitted).

*Morales v. Off. of Inspector Gen.*, 22-0216, pp. 7-8 (La. App. 4 Cir. 10/5/22), 366 So.3d 526, 534-35 (internal footnotes omitted).

## DISCUSSION

The Board appeals, asserting numerous assignments of error, but the Board's central premise is that the Commission erred by reinstating Ms. Hamilton.[2]

---

[2] Specifically, the Board asserts the following assignments of error:

1) The Commission erred in granting the appeal and reinstating Appellee, Sadra Hamilton, to her employment on the grounds that the Appointing Authority failed to show cause for her termination.

2) The commission erred in failing to find that Hamilton's violent brandishing of a pair of scissors to threaten and intimidate a subordinate employee in violation of the Board's policies prohibiting workplace violence and dangerous weapons[.]

3) The Commission erred when it found the Board did not establish Sadra Hamilton threatened a subordinate co-worker with a pair of scissors putting herself and others in harm[']s way.

4) The Commission erred when it substituted its judgment for that of the Board's Human Resources Director and Department Manager and disregarded their findings that Hamilton's violent behavior was a violation of policy warranting dismissal.

3

The Board's termination letter informed Ms. Hamilton that:

> The SWBNO has determined that you failed to show regard for maintaining a professional work space that is free from harassment and/ or aggression and that your willful acts of violence towards another employee jeopardized her safety, your safety, and that of others. HR and Employee Relations supports SWBNO's Workplace Violence Prevention Policy, which has zero tolerance for violence or violent behavior of any kind in the workplace.

*Disciplinary Hearing*

Numerous witnesses testified at the disciplinary hearing. We start with the testimony of Ms. Hamilton, as it provides relevant background.

Ms. Hamilton testified that she worked for the Board for over a decade and never received any kind of discipline or unsatisfactory performance evaluations. At the time of the incident, she supervised five employees. Ms. Hamilton stated that Ms. Neveaux had previous violations of the cell phone policy, dress code policy, and attendance policy. Ms. Neveaux also had issues with tardiness and absenteeism. Attempts to correct Ms. Neveaux were not well-received. As Ms. Hamilton stated, "Anything I told her, it was a problem." The day prior to the incident, October 11, 2023, Ms. Hamilton and two other supervisors met with Ms. Neveaux to address her ongoing employment issues. Later that day, Ms. Hamilton began to receive harassing and threatening text messages from an unknown number, which included such phrases as, "I hope you die, b***h; ugly h*e; and bald-headed b***h." Ms. Hamilton reported the text messages and expressed fear for her safety, but she was informed the phone number was not traceable. Ms. Hamilton believed the texts came from Ms. Neveaux based on the language used.

The next day, October 12, 2023, Ms. Neveaux arrived late to work. In order to avoid her, Ms. Hamilton moved to a desk further away. Ms. Neveaux began to aggressively approach Ms. Hamilton's desk. Ms. Hamilton testified that Ms.

Neveaux was, "cursing, yelling, screaming all kinds of stuff, and she was trying to get to me, but [other employees] were holding her." Ms. Neveaux made it approximately twenty to twenty-five feet from Ms. Hamilton before being restrained. Ms. Hamilton testified that she was holding the office phone in one hand and her cell phone in the other hand, as she was trying to call security. She said she did not pick up scissors or make a jabbing gesture towards Ms. Neveaux. Ms. Neveaux was escorted out of the building. Ms. Hamilton remained at work.

Debra Tate, Ms. Hamilton's former supervisor and later co-supervisor, provided corroborating testimony. Ms. Tate stated that Ms. Neveaux had attendance problems, Ms. Neveaux was found asleep at her desk with a blanket over her head, and she wore slippers in the office. Ms. Tate testified that during the incident Ms. Hamilton had a silver tip pen in one hand and made jabbing gestures during the incident. Lastly, Ms. Tate believed that Ms. Hamilton should not have been terminated.

Reneé Reese, a former co-worker of Ms. Hamilton's, witnessed the incident and described Ms. Neveaux as generally combative or aggressive. She testified that Ms. Neveaux was cussing and yelling at Ms. Hamilton, but she was prevented from reaching Ms. Hamilton by other employees. She stated that Ms. Hamilton had her work phone in one hand and her cell phone in her other hand during the incident. She never witnessed Ms. Hamilton act violently. Ms. Reese admitted on cross-examination that she might have missed approximately ten seconds of the incident when she stepped out to notify security.

Ms. Hamilton presented two additional witnesses who were not present for the incident. One witness testified that she witnessed Ms. Neveaux wearing slippers in the office and sleeping at her desk. The other witness testified that she

5

was present for a separate incident wherein Ms. Neveaux was aggressive with Ms. Hamilton when Ms. Hamilton told Ms. Neveaux she could not sleep at her desk.

The Board presented three witnesses. The interim human resources director testified that Ms. Hamilton violated the workplace violence policy by utilizing scissors as a weapon to threaten another employee. The misuse of the scissors from their intended use turned them into a weapon. The other two witnesses were from the customer service department and were present for the incident. They both testified that Ms. Hamilton had a work phone in one hand and scissors making a jabbing gesture in the other hand.

After considering the evidence and testimony, the hearing examiner found:

- . . . I find that Appointing Authority satisfied its burden with respect to Appellant threatening Ms. Neaveaux with a pen.

- Here, any threat of workplace violence, whether it involved scissors, a pen, or no instrument at all could be presumed to impair the efficient operations of SWBNO. Therefore, this prong of the analysis is presumed to be satisfied.

- . . . I find that termination was incommensurate with the infraction. The disciplinary letter included SWBNO's Progressive Discipline Policy with respect to the original alleged infractions. However, no testimony was elicited with respect to the policy. In any event, the disciplinary letter states that "[t]hreatening or attempting bodily harm to the public, a supervisor or co-worker; 3-Day Suspension/Termination." (HE 1).
  In light of Appellant's lack of disciplinary history and Appointing Authority's failure to satisfy its burden with . . . respect to Appellant using scissors as a weapon in the workplace, it is my recommendation to the Commission that Appellant's discipline be reduced from termination to a 3-day suspension.

*Civil Service Commission*

After reviewing and analyzing the entire record, the Commission found:

The Commission makes a factual determination that based on the statements made by Ms. Neveaux to Ms. Hamilton on October 12, 2023, and the temporal proximity to the meeting about Ms. Neveaux's performance, that Ms. Neveaux sent the threatening text messages to Ms. Hamilton on October 11, 2023. The Commission also finds that Ms. Neveaux's threatening behavior was motivated by Ms. Hamilton's criticism of Ms. Neveux's [sic] unprofessional behavior and poor work performance. Ms. Hamilton was understandably afraid of Ms. Neveaux. Although she tried to avoid contact with Ms. Neveaux, Ms. Neveaux attempted to physically harm Ms. Hamilton on October 12, 2023.

The Commission is unable to make a factual determination about the object in Ms. Hamilton's hand on October 12, 2023. Two witnesses testified Ms. Hamilton made stabbing motions with scissors. (Tr. at 19, 32). One of these witnesses previously had a romantic relationship with Ms. Hamilton's husband prior to their divorce, raising the possibility of bias. (Tr. at 191). Ms. Tate, who blocked Ms. Neveaux and instructed Ms. Hamilton to stop, testified that Ms. Hamilton had a pen with a silver tip in her hand. (Tr. at 132-33). Renee Reese and Ms. Hamilton testified that Ms. Hamilton had her cell phone in one hand. (Tr. at 91, 190, 199). However, during the investigation, Ms. Reese only mentioned the desk phone in Ms. Hamilton's hand. (Ex. SWBNO-1).

Therefore, the Sewerage & Water Board has not carried its burden of showing that Ms. Hamilton had scissors in her hand. As a result, the Sewerage & Water Board has not carried its burden of showing that Ms. Hamilton brandished a dangerous weapon under its Professional Conduct Policy or possessed a weapon under its Workplace Violence Prevention Policy.

Because Ms. Hamilton performed her job duties by observing Ms. Neveaux's workplace behavior and recommending the termination of Ms. Neveaux's employment, Ms. Hamilton was subjected to vulgar threats (both off-duty and at work) and attempted physical harm. Based on the totality of the circumstances, Ms. Hamilton's instinctive reaction based on fear for her physical safety did not rise to the level of threats and intimidation under the applicable Sewerage & Water Board policies.

One member of the Commission dissented in part, finding that Ms. Hamilton should have attempted to de-escalate the situation and would have imposed a three-day suspension.

*Appeal*

7

We are required to review the factual conclusions of the Commission utilizing the manifest error standard of review. *See Mathieu*, 09-2746, p. 5, 50 So.3d at 1262. The witnesses' testimony regarding whether Ms. Hamilton picked up a pair of scissors and gestured in a jabbing motion was not definitive. One of the two witnesses presented by the Board had questionable credibility since she allegedly had an affair with Ms. Hamilton's then husband. The witnesses called by Ms. Hamilton testified that she was either holding two phones or a phone and a pen. Thus, we find the Commission did not commit manifest error by stating it could not determine what object Ms. Hamilton was holding. Given that a determination of whether Ms. Hamilton brandished a dangerous weapon could not be made, the Commission correctly held that the Board failed to meet the burden of proof for a violation of the workplace violence prevention policy.

Having reviewed the Commission's factual conclusions for manifest error, we must now examine the Commission's decision to reinstate Ms. Hamilton. We note that once the Commission found the Board failed to meet the burden of proof, no legal cause existed for punishment. The Commission also credited Ms. Hamilton for over a decade of service to the Board without a single disciplinary action and referenced Ms. Hamilton's fear of Ms. Neveaux. As the Commission stated, given the "totality of the circumstances" in this particular case, we find the Commission's reinstatement of Ms. Hamilton was not arbitrary, capricious, or an abuse of discretion, as a rational basis exists for the decision.

## DECREE

For the above-mentioned reasons, we find the Commission did not arbitrarily or capriciously order the reinstatement of Ms. Hamilton and affirm.

**AFFIRMED**

8