STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

14-452


RAYMOND ALEXANDER

VERSUS

CITY OF ALEXANDRIA, ET AL.


**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 245,375
HONORABLE MARY LAUVE DOGGETT, DISTRICT JUDGE

**********

**PHYLLIS M. KEATY**
**JUDGE**

**********

Court composed of J. David Painter, James T. Genovese, and Phyllis M. Keaty, Judges.


**AFFIRMED.**

Kelvin G. Sanders
Attorney at Law
Post Office Box 13922
Alexandria, Louisiana 71315
(318) 487-0009
Counsel for Plaintiff/Appellant:
    Raymond Alexander

**Steven M. Oxenhandler**
**Michael J. O'Shee**
**Gold, Weems, Bruser, Sues & Rundell**
**Post Office Box 6118**
**Alexandria, Louisiana  71307**
**(318) 445-6471**
**Counsel for Defendant/Appellee:**
    **City of Alexandria**

**Brian D. Cespiva**
**Attorney at Law**
**711 Washington Street**
**Alexandria, Louisiana  71301**
**(318) 448-0905**
**Counsel for Defendant/Appellee:**
    **Alexandria Municipal Fire & Police Civil Service Board**

**KEATY, Judge.**

Plaintiff, Raymond Alexander, Sr., appeals the trial court's judgment in favor of Defendants, the City of Alexandria (the City) and the Alexandria Municipal Fire & Police Service Board (the Board). For the following reasons, the trial court's judgment is affirmed.

## FACTS AND PROCEDURAL BACKGROUND

In this employment termination case, the issue is whether the standards required by La.R.S. 33:2181(B)(2) for notifying a fireman that he was under investigation were met. In that regard, Alexander was a firefighter employed by the Alexandria Fire Department (AFD) who lied about having an ill son in order to delay having to take a random drug test, which was scheduled for the morning of March 28, 2012. On the evening prior to the drug screen, Alexander had taken pain medication not prescribed to him by a doctor, and he feared failing the test for that reason. Alexander caused further delay by falsely claiming that he was meeting with his daughter in Lafayette on the morning of March 29, 2012. As a result of his lies, almost forty-eight hours passed between the time he said he took the medication and the time he finally took the drug test on the evening of March 29, 2012. His test results came back as diluted. Alexander was subsequently terminated by the AFD through written correspondence dated May 10, 2012.

Alexander appealed his termination to the Board, which affirmed the AFD's decision. Alexander then appealed the Board's decision to the trial court, which also affirmed the Board's decision.

In this instant appeal, Alexander assigns as error the trial court's affirmation of the Board's decision not to reverse the AFD's termination. Alexander contends

that the AFD failed to meet the standards required by Louisiana law, La.R.S. 33:2181(B)(2), for notifying a fireman that he was under investigation.

## STANDARD OF REVIEW

The standard of review utilized in this civil service disciplinary matter was enunciated by the supreme court in *Mathieu v. New Orleans Public Library*, 09-2746, pp. 5-6 (La. 10/19/10), 50 So.3d 1259, 1262-63, as follows:

> Appellate courts reviewing civil service disciplinary cases are presented with a multifaceted review function. *Bannister* [*v. Dep't of Sts.*, 95-0404, p. 8 (La. 1/16/96), 666 So.2d 641, 647]; *Walters* [*v. Dep't of Police of the City of New Orleans*, 454 So.2d 106, 113 (La.1984)]. Initially, deference should be given to the factual conclusions of the civil service commission. A reviewing court should apply the clearly wrong or manifest error rule prescribed generally for appellate review. *Bannister*, 95-0404 at 8, 666 So.2d at 647; *Walters*, 454 So.2d at 114. Then, the court must evaluate the commission's imposition of a particular disciplinary action to determine if it is both based on legal cause and is commensurate with the infraction; the court should not modify the commission's order unless it is arbitrary, capricious, or characterized by abuse of discretion. *Id*. "Arbitrary or capricious" means the absence of a rational basis for the action taken, *Bannister*, 95-0404 at 8, 666 So.2d at 647; "abuse of discretion" generally results from a conclusion reached capriciously or in an arbitrary manner, *Burst v. Board of Commissioners, Port of New Orleans*, 93-2069, p. 5 (La.App. 1 Cir. 10/7/94), 646 So.2d 955, 958.

Thus, the clearly wrong or manifest error standard of review is applicable in the instant matter.

## DISCUSSION

In his only assignment of error, Alexander contends that the AFD failed to meet the notification standards required by La.R.S. 33:2181, which provides in pertinent part:

> B. Whenever a fire employee is under investigation, the following minimum standards shall apply:
>
> . . . .

2

(2) The fire employee being investigated shall be informed in writing at the commencement of any interrogation of the nature of the investigation, of the identity and authority of the person conducting such investigation, of the identity of all persons present during such interrogation, and of the specific charges or violations being investigated. The fire employee shall be allowed to make notes.

In the present case, the record contains written correspondence from AFD Fire Chief Bernard Wesley to Alexander dated April 4, 2012. The correspondence provided Alexander with written notice of the AFD's initiation of a formal investigation into his actions. Alexander was further advised of the nature of the investigation, that AFD Fire Prevention Chief Larry King would conduct the investigation, and of the specific alleged violations that Chief King would investigate. The correspondence was signed by both Chief Wesley and Alexander on April 4, 2012. Under Alexander's signature, the phrase "Received by Firefighter Raymond Alexander" is noted.

Following this April 4, 2012 correspondence, Alexander met with Chief King on April 13, 2012, April 17, 2012, and April 19, 2012. Prior to each meeting, Alexander was not provided written correspondence similar to the April 4, 2012 written correspondence. In his appellate brief and trial court testimony, Alexander argues that he should have been provided written correspondence in accordance with La.R.S. 33:2181(B)(2) and identical to the April 4, 2012 written correspondence at the beginning of each and every meeting which occurred on these three dates. Since no written correspondence was received after April 4, 2012, Alexander contends that the AFD failed to comply with La.R.S. 33:2181(B)(2).

Thus, we must determine whether an interrogation occurred on these three dates. If an interrogation occurred, we must then determine whether the notice

provided in the April 4, 2012 written correspondence, which complied with the requirements of La.R.S. 33:2181(B)(2), applied to the April 13, 2012, April 17, 2012, and April 19, 2012 alleged interrogations.

With respect to whether the April 13, 2012 meeting constitutes an interrogation, we review the record which shows that the May 10, 2012 written correspondence terminating Alexander was submitted into evidence at the Board's hearing which occurred on July 25, 2012. This twelve-page letter plus attachments provides a factual basis, a timeline of events, truths and mistruths, and the rules that Alexander violated which led to his termination. Pursuant to this correspondence, April 13, 2012, was the date of the first internal affairs investigation meeting between Chief King and Alexander. The correspondence indicates that at the commencement of that meeting, Alexander signed the Firefighters' Bill of Rights. The bill of rights is a reproduction of the provisions of La.R.S. 33:2181, entitled "Applicability; minimum standards during investigation; penalties for failure to comply." Chief King further testified that Alexander signed the bill of rights. The written correspondence further reveals that Alexander presented Chief King with a "Timeline and Rebuttal to Administrative Leave Letter and Investigation." Both the bill of rights and rebuttal were also submitted into evidence at the Board's hearing.

Notably, there is no indication in this May 10, 2012 correspondence, nor anywhere in the record, that any questions were asked during this April 13, 2012 meeting. At the Board's hearing, Chief King testified that he did not ask Alexander any questions on April 13, 2012, but, instead, rescheduled his investigation for April 17, 2012, in order to review the rebuttal document. Chief King testified that April 17, 2012, was the first time he actually questioned

4

Alexander. Thus, an interrogation did not take place for purposes of La.R.S. 33:2181(B)(2) on April 13, 2012.

Even if an interrogation did occur on April 13, 2012, the elements of La.R.S. 33:2181(B)(2) would be satisfied. Specifically, in Alexander's written rebuttal that he provided to Chief King on April 13, 2012, Alexander stated that "[o]n April 4, 2012, I was called to Chief Cook's[1] office again in order to receive another letter. This time, Jerald Duncan and Bryant McClendon came with me." The foregoing shows that Alexander was in possession of the April 4, 2012 correspondence prior to the April 13, 2012 meeting. Thus, the requirements of La.R.S. 33:2181(B)(2) were satisfied.

The Board was also presented with testimony and evidence regarding the April 17, 2012 meeting. During the hearing, Chief King admitted that an interrogation occurred on April 17, 2012, although he did not provide Alexander with any written document immediately prior to that interrogation other than the Firefighters' Bill of Rights. Chief King testified that Duncan and McClendon accompanied Alexander to this interrogation. The bill of rights dated April 17, 2012, shows that Duncan and McClendon accompanied him as they both signed the bill of rights as witnesses. Thus, Alexander knew who was present at that interrogation.

Chief King further testified that at the April 17, 2012 interrogation, Alexander was in possession of the April 4, 2012 written correspondence. Specifically, Chief King testified that Alexander "had a letter from the chief that indicated the nature of the investigation." Importantly, Chief King testified that he (Chief King) "referred to that [April 4, 2012] letter" during that interrogation.

---

[1] First Assistant Chief Bruce Cook was employed by the AFD.

5

Alexander's statement taken during the April 17, 2012 interrogation was also submitted into evidence at the Board's hearing. In his statement, Alexander quoted from the April 4, 2012 letter when discussing the chain of events leading to his termination.

Based on the foregoing, an interrogation did occur on April 17, 2012. The evidence shows that Alexander was in possession of the April 4, 2012 letter prior to and at the April 17, 2012 interrogation. Moreover, Alexander knew who was present at the interrogation as shown by the bill of rights. Thus, the provisions of La.R.S. 33:2181(B)(2) were complied with on April 17, 2012.

Finally, a subsequent statement of Alexander taken by Chief King on April 19, 2012, was also submitted into evidence at the Board's hearing. In his statement, Alexander admitted to requesting the instant meeting occurring on April 19, 2012, in order to discuss more of the situation which occurred on March 28, 2012, i.e., the day he skipped his drug test. The foregoing shows that it is questionable whether an interrogation under La.R.S. 33:2181(B)(2) actually occurred since the meeting was requested by Alexander. Nevertheless, Chief King once again presented Alexander with the bill of rights. The bill of rights, dated April 19, 2012, was signed by Alexander, Duncan, and McClendon. Thus, Alexander knew who was present at that alleged interrogation. Additionally, the requirements were met during this alleged interrogation for the same reasons they were met at the April 17, 2012 interrogation and the April 13, 2012 meeting. Specifically, Alexander was in possession of the April 4, 2012 correspondence prior to the April 19, 2012 alleged interrogation.

Accordingly, the foregoing shows that Alexander was provided with all required written information pursuant to the April 4, 2012 correspondence. He

used that information to provide a rebuttal document. He had the written notice with him while he was interrogated. He knew exactly what was occurring in relation to the investigation. Through the written notice and his copies of the bill of rights, he knew the identity all persons present at each meeting with Chief King.

At the civil service proceeding, the Board was presented with the above evidence and voted to uphold the AFD's termination of Alexander. Following the appeal of the Board's decision, the trial court stated: "[C]onsidering the standard of review is clearly erroneous or manifest error, I just don't see . . . plaintiff meeting that burden here today and to the extent that I would overturn the decision of the Board[,] so I'm gonna deny your request." The trial court then affirmed the Board's decision.

Finally, we note that Alexander provided two cases in support of his position. In his first cited case, *Ouachita Parish Police Jury v. Ouachita Parish Fire Protection District No. 1 Civil Service Board*, 46,480 (La.App. 2 Cir. 9/21/11), 72 So.3d 987, a firefighter's termination was overturned by a civil service board because his interrogation was not recorded as required by La.R.S. 33:2181(B)(4). Pursuant to La.R.S. 33:2181(B)(4), "[a]ll interrogations of any fire employee in connection with the investigation shall be recorded in full." In the present case, Alexander's assignment of error only deals with La.R.S. 33:2181(B)(2) rather than La.R.S. 33:2181(B)(4). Regardless, there is no issue regarding the recording of Alexander's statements as the record contains all of the recorded statements taken during Alexander's interrogations. Thus, *Ouachita Parish Police Jury* is inapplicable to the present case.

Alexander also cites *Bracey v. City of Alexandria*, 11-621 (La.App. 3 Cir. 2/1/12), 84 So.3d 669. In *Bracey*, the main issue was whether the city violated the

sixty-day investigative period required by La.R.S. 33:2186. Since the issue in the present case deals with a different statute, i.e., La.R.S.33:2181(B)(2), *Bracey* does not offer guidance with respect to the issue in the present case. In fact, this court in *Bracey* only briefly mentions La.R.S.33:2181(B)(2) when it recites the statute in response to the plaintiff's second and third assignments of error, which this court found lacked merit. Thus, *Bracey* is also inapplicable since it provides no guidance for the interpretation of La.R.S. 33:2181(B)(2).

For the reasons stated above, we find the trial court was not manifestly erroneous, and its judgment is affirmed.

## DECREE

The trial court's judgment is affirmed. Costs of this appeal are assessed against Plaintiff/Appellant, Raymond Alexander.

**AFFIRMED**.