STONE, J.
FACTS AND PROCEDURAL HISTORY
Jonathan Craft ("Craft") appeals his termination from employment as a District Chief for the Benton Fire Department (the "fire department"). Craft's termination was based on the fire chief's finding that Craft engaged in misconduct while on duty. Craft, while on duty and using a fire rescue truck as his transportation, visited Ms. Ashley Roberts at her home for hours at a time. Craft was romantically involved with Ms. Roberts at the time of these visits, which occurred late at night and in the wee hours of the morning.
Initially, around the end of April or beginning of May of 2017, Craft's subordinates at the fire department complained that Craft was absent while on duty and his whereabouts were unknown during these absences. According to Chief Turner's testimony, this complaint included allegations that Craft was deactivating the GPS in the fire truck which he was using *387 as transportation during these absences.[1]
Chief Turner discussed this complaint with Craft, who explained these absences by stating that he was visiting his estranged wife and children at his home. This explanation was an intentionally misleading half-truth if not a total lie.[2] Chief Turner, unaware that Craft was actually visiting Ms. Roberts during these absences, instructed Craft to swap shifts with another district chief or take vacation leave if he wanted to visit his family during his (otherwise) scheduled work times. This discussion between Craft and Chief Turner was not documented in writing or otherwise.
Three to four weeks later, on May 26, 2017, a local citizen, Trey Hicks ("Hicks"), filed a written complaint against Craft. This complaint included allegations that Craft, while on duty as a district chief, was using a fire department emergency response vehicle ("fire truck") to make late-night visits to Ms. Roberts at her home. Ms. Roberts confirmed these allegations in her interview, which was taken during the course of the investigation. She also expanded on the number of times which Craft made these visits.
Additionally, Hicks' complaint included allegations that Craft had threatened, stalked, or harassed Hicks. The fire department forwarded a copy of the Hicks complaint to the Bossier Parish Sheriff's Office ("BPSO") to determine whether there would be a criminal investigation. The BPSO declined to investigate the matter. Thereafter, on June 6, 2017, the fire department commenced its own investigation of the matter.[3]
In his testimony, Craft admitted that, prior to being interrogated, he was given a "notice of investigation" letter, a copy of the Firefighter Bill of Rights, and a copy of Hicks' written complaint.[4] This notice also included a direct order (hereafter, referred to as the "gag order") to Craft to refrain from discussing the investigation with anyone other than his attorney or representative, or one of the investigators. Furthermore, the notice warned that violation of the gag order would result in charges of insubordination.
During the fire department's investigation, Craft was interrogated twice, first by Chief Turner and later via polygraph examination.[5] After being given the gag order, Craft "discussed" the investigation with Ms. Roberts, a witness in the investigation. The day that Hicks filed the complaint, Craft went to see Ms. Roberts at a *388 local gym. She asked why he was not at work, and he explained that he was on administrative leave because he was under internal affairs investigation. He further stated that he suspected his ex-wife or Hicks had instigated the investigation, and that Ms. Roberts could not say anything or he would be "fired on the spot." Also, Ms. Roberts stated that, on June 12, 2017, i.e., the day before her interview with the fire department investigators, Craft called her and asked if anyone had contacted her, apparently in relation to the Hicks complaint. Craft, in his testimony, denied making this inquiry of Ms. Roberts. Finally, Ms. Roberts also stated that Craft had visited her at her house using the fire truck on more than just the two occasions which Hicks had reported.
However, Craft did admit that, on several occasions, he made the late-night visits to Ms. Roberts at her house while he was on duty and was using a "full-fledged fire rescue truck" as his transportation. Craft initially denied deactivating the GPS at all. Later he admitted to deactivating it, but claimed it was solely for the purpose of plugging in his cell phone. Later yet, he admitted that, on approximately four occasions, he deactivated the fire truck's GPS with the intent to conceal his whereabouts from his subordinates at the fire station when he was visiting Ms. Roberts.
After the investigation, the fire chief terminated Craft for: (1) the late-night visits to Ms. Roberts in the fire truck while on duty, and, in doing so, attempting to conceal his whereabouts by turning off the fire truck's GPS; and (2) "discussing" the investigation with Ms. Roberts, a witness therein, after being directly ordered in writing not to "discuss" the investigation with anyone but his lawyer or representative, or the investigators.
At the conclusion of the initial hearing before the board, the board deliberated in "executive session," i.e ., outside Craft's presence and outside of public access. The district court remanded, and the board conducted another hearing and again affirmed Craft's termination, this time without going into executive session. On re-appeal, the district court affirmed the board's decision. Thereupon, Craft filed the instant appeal.
ASSIGNMENTS OF ERROR
Craft enumerates 12 assignments of error:
1. District Court erred in affirming termination as it was undisputed the Fire Department failed to provide Craft with written notice at the commencement of the fire department's investigator's interrogation in violation of La. R.S. 33:2181(B)(2).
2. District Court erred in affirming the termination as it was undisputed the polygrapher [sic] failed to provide Craft with a written notice at the commencement of his interrogation of Craft in violation of La. R.S. 33:2181(B)(2).
3. District Court erred in affirming termination as it was undisputed Craft was never told that he was under investigation for telling a friend he was under investigation in violation of La. R.S. 33:2181(B)(1).
4. District Court erred in affirming the termination as it was undisputed Craft was never told he was under investigation for turning off his GPS in violation of La. R.S. 33:2181(B)(1).
5. District Court erred in finding that disconnecting GPS was a violation of some assumed policy when no such policy was in evidence and all witnesses testified that no such policy existed.
6. District Court erred in affirming termination for "insubordination" as *389 it was undisputed Craft never discussed the facts of the investigation with anyone.
7. District court erred in affirming termination as the Fire Chief admitted he had no evidence that Craft's stating he was under investigation affected the operation of the fire department or the investigation.
8. District Court erred in affirming termination of 17-year employee for alleged violation of nonexistent policies or procedures such that any discipline was arbitrary and capricious and without good faith or cause.
9. District Court erred in affirming termination as Craft had already been counseled for leaving the station and turning off the GPS.
10. Alternatively, District Court erred in affirming termination as Fire Department violated the 60-day rule with regard to any investigation into Craft being away from the fire station with the GPS turned off.
11. District Court erred in affirming termination as Fire Department failed to produce recording of polygraph interrogation in violation of La. R.S. 33:2181(B)(4).
12. District Court erred in affirming termination as termination was disproportionate to the severity of the alleged charges.[6]
DISCUSSION
Civil service employees, such as appellant Jonathan Craft, are granted by law special protections from discipline and termination by the employer. In Morris v. City of Minden , 50,406 (La. App. 2 Cir. 3/2/16), 189 So.3d 487, 493-94, writ denied , 2016-0866 (La. 6/3/16), 192 So.3d 748, we explained the permissible grounds for discipline of civil service employees, and the administrative appeal of such discipline:
Article X, Section 8(A) of the Louisiana Constitution, which governs disciplinary action as to classified civil servants, provides that no person who has gained permanent status in the classified state or city service shall be subjected to disciplinary action except for cause expressed in writing. In this context, "cause"...includes conduct prejudicial to the public service involved or detrimental to its efficient operation. The...board has a duty to independently decide, from the facts presented, whether the appointing authority had good or lawful cause for taking disciplinary action and, if so, whether the punishment imposed was commensurate with the dereliction. In other words, the civil service...board reviewing the disciplinary action of the appointing authority not only ensures that the discipline was imposed in good faith for cause, but [also] independently ensures that the particular punishment imposed was proper.
In Mathieu v. New Orleans Pub. Library , 2009-2746 (La. 10/19/10), 50 So.3d 1259, 1262-63, the Louisiana Supreme Court explained the parameters for judicial review of discipline of a civil service employee:
Appellate courts reviewing civil service disciplinary cases are presented with a multifaceted review function. Initially, deference should be given to the factual conclusions of the civil service commission. A reviewing court should apply the clearly wrong or manifest error rule *390 prescribed generally for appellate review. Then, the court must evaluate the commission's imposition of a particular disciplinary action to determine if it is both based on legal cause and is commensurate with the infraction; the court should not modify the commission's order unless it is arbitrary, capricious, or characterized by abuse of discretion. "Arbitrary or capricious" means the absence of a rational basis for the action taken; "abuse of discretion" generally results from a conclusion reached capriciously or in an arbitrary manner[.]
* * *
(Internal citations omitted).
Thus, the board was required to determine: (1) whether the Fire Chief's termination of Craft was undertaken in good faith for cause; and (2) if so, whether termination was commensurate with Craft's misconduct. We apply the manifest error standard of review to the board's findings of fact, and based on the facts so ascertained, are to determine whether the board's decision was supported by a rational basis.
La. R.S. 33:2560(A) sets forth a list of grounds on which a "permanent" civil service employee may be terminated or otherwise disciplined. These include:
1. Unwillingness or failure to perform the duties of his position in a satisfactory manner.
...
3. The commission or omission of any act to the prejudice of the departmental service or contrary to the public interest or policy.
4. Insubordination.
5.... [A]ny dishonest, disgraceful or immoral conduct . (Emphasis added).
Substantive requirements: Termination in good faith for cause; proportionality. Assignments 5, 6, 7, 8, & 12.
The evidence in the record adequately supports the factual conclusion that Craft, on numerous occasions, while on duty as a district chief, used the fire truck to visit Ms. Roberts at her home for multiple hours at a time. Craft and Ms. Roberts were romantically involved at the time of these visits, which took place late at night and in the wee hours of the morning. In doing so, Craft knowingly burned fuel paid for by the public, and put miles on the fire truck paid for by the public.
Furthermore, Craft engaged in a pattern of dishonesty in attempting to conceal his on-duty visits to Ms. Roberts. He lied to Chief Turner when Chief Turner asked where he was going during these absences. Specifically, he told Chief Turner that he was visiting his estranged wife and children when he was actually visiting Ms. Roberts at her home. Additionally, in his initial interview with Chief Turner, Craft lied about deactivating the GPS, claiming he had not deactivated the GPS at all. Subsequently, however, Craft admitted that he deactivated the GPS and that his motive for doing so was to conceal - from his subordinates at the fire department - his visits to Ms. Roberts' house.
Craft was placed in a position of public trust - he was not merely a rank and file firefighter, but was the district chief. As such, it was his job to lead and to supervise fire station operations, including its responses to life-and-death emergencies. Craft abused the trust that was reposed in him, and manifestly failed to shoulder the responsibility of a district chief.
Given these facts, we cannot agree with Craft that his termination from employment was lacking good faith for cause or was disproportionate to the severity of his derelictions. These assignments are without *391 merit. Accordingly, we pretermit whether Craft's conversations with Ms. Roberts regarding the investigation constituted a violation of the gag order and, if so, would also have justified termination.
Finally, we note that the lack of a written policy prohibiting the civil service employee's subject conduct does not preclude the employer from terminating the employee based on that conduct. Thus, the fire department was not required to have a written policy specifically prohibiting a district chief from visiting his girlfriend at her house for hours at a time (late at night and in the wee hours of the morning) while on duty and using a fire truck as his transportation. Nor was it required to have a written policy specifically prohibiting a district chief from deactivating the fire truck's GPS to conceal such visits from the district chief's subordinates at the fire station. Craft's arguments to the contrary are without merit.
Procedural requirements for valid termination: Statute governing firefighter disciplinary investigation. Assignments 1, 2, 3, 4, & 11.
La. R.S. 33:2181 provides specific procedural protections to fire employees who are under investigation by the employer. Even where the discipline is imposed on a fire employee in good faith for cause, and the discipline imposed is commensurate with the employee's misconduct, the discipline is nonetheless an absolute nullity if the investigation into the employee's alleged misconduct is conducted in violation of this statute. La. R.S. 33:2181(C).
In relevant part, La. R.S. 33:2181 provides as follows:
A. Unless context otherwise requires, the following terms when used in this Subpart shall be given the meanings assigned below:
...
(2) "Interrogation" includes but is not limited to any formal interview, inquiry, or questioning of any fire employee by the appointing authority or the appointing authority's designee regarding misconduct, allegations of misconduct, or policy violation. An initial inquiry conducted by the fire employee's immediate supervisors shall not be considered an interrogation.
B. Whenever a fire employee is under investigation, the following minimum standards shall apply:
(1) Prior to commencing a formal investigation of a fire employee, the appointing authority shall notify the employee in writing of the nature of the investigation, of the identity and authority of the person conducting such investigation, and of the specific charges or violations being investigated.
(2) The fire employee being investigated shall be informed in writing at the commencement of any interrogation of the nature of the investigation, of the identity and authority of the person conducting such investigation, of the identity of all persons present during such interrogation, and of the specific charges or violations being investigated. The fire employee shall be allowed to make notes.
...
(4) All interrogations of any fire employee in connection with the investigation shall be recorded in full. The fire employee shall not be prohibited from obtaining a copy of the recording or transcript of the recording of his statements, upon submitting a written request to the fire chief.
...
C. No fire employee shall be disciplined, demoted, dismissed or be subject to any adverse action unless the investigation is conducted in accordance with *392 this Subpart. Any discipline, demotion, dismissal or adverse action of any sort taken against a fire employee without complete compliance with the provisions of this Subpart is an absolute nullity.
Craft urges four assignments of error based on alleged violations of this statute. First, he argues that, in violation of subsection (B), supra , he was not given adequate pre-interrogation notice of the nature of the investigation and specific charges involved. His basis for that assertion is that the notice he was given did not explicitly state that the investigation included inquiry into his deactivation of the fire truck's GPS.
Second, he contends that, in violation of subsection (B)(2), he was not given another copy of the notice at the commencement of each interrogation (i.e. , the interview with Chief Turner and the polygraph test). Craft takes the position that subsection (B)(2) requires the fire department to give the employee an additional copy of the notice at each separate interrogation.
Third, Craft claims that subsection (B) required the fire department to give him a separate notice of investigation regarding his discussion of the investigation with Ms. Roberts in supposed contravention of the gag order.
Fourth, Craft argues that subsection (B)(4) was violated in that he was not given an audio recording of the polygraph examination. Craft was, however, given a written report of the polygraph examination which included a transcript of all the questions and answers related to the issues under investigation.
GPS deactivation: notice. Craft admits that, at the beginning of the fire department's interrogation, he was notified that he was being interviewed regarding Hicks' complaint. The day that Hicks filed the complaint, May 26, 2017, Craft was given a notice of investigation letter and a copy of the Firefighter Bill of Rights. On June 6, 2017, i.e., after the Bossier Sheriff's Office declined to pursue the matter, Craft was given a copy of the Hicks complaint. Craft was not interrogated until approximately a week after he received the Hicks complaint.
Craft contends that the notice's omission of an explicit statement regarding the deactivation of the fire truck's GPS rendered it insufficient to apprise him of the nature of the investigation and the "specific charges or violations being investigated." La. R.S. 33:2181(B)(2), supra . During the first interrogation, Chief Turner asked Craft about his deactivating the fire truck's GPS. Also, the fire chief admitted that, until the PDC hearing, Craft was never explicitly told he was under investigation for turning off his GPS.
We hold that Craft was given sufficient notice of the nature of the investigation and the specific charges involved, despite the lack of an explicit statement regarding his deactivation of the fire truck's GPS in attempting to conceal his late-night visits to Ms. Roberts' house while he was on duty. Upon commencing its investigation, the fire department provided Craft with a copy of the Hicks complaint, which contained the allegations of Craft's late-night visits to Ms. Roberts' house in the fire truck as well as photographs of the fire truck parked in her driveway. Hicks' allegations were sufficient to apprise Craft that everything he did in taking the fire truck to visit Ms. Roberts while on duty was within the scope of the investigation. Thus, Craft's deactivation of the fire truck's GPS, which he did to conceal his late-night visits to Ms. Roberts' house in the fire truck, was sufficiently implied by the notice given. The notice requirements of La. R.S. 33:2181(B) do not require to give an explicit, *393 detailed ex ante rendition of every single fact which may have bearing on the outcome of the investigation.
New notice for each interrogation. Craft contends that, prior to the interview with Chief Turner and the polygraph examination - which were conducted after he was already given the notices described above - he was entitled to another copy of the notices required by La. R.S. 33:2181(B)(2), which states:
The fire employee being investigated shall be informed in writing at the commencement of any interrogation of the nature of the investigation, of the identity and authority of the person conducting such investigation, of the identity of all persons present during such interrogation, and of the specific charges or violations being investigated. (Emphasis added).
Thus, it is Craft's contention that the requirement that written notice be given "at the commencement of any interrogation" means that a separate copy of the notice packet must be given at each and every interrogation.
We disagree. Where, as here, notice complying with La. R.S. 33:2181(B)(2) is given at the onset of the investigation, it is inarguable that the notice has been given prior to the "commencement of any interrogation." It matters not whether the notice is given prior to or at the commencement of interrogation: either way, the employee is apprised of the specified facts prior to being interrogated. The notice given satisfies La. R.S. 33:2181(B)(2).
Furthermore, our reading of the statute is not only grammatically sound, but also, is necessary to avoid absurd consequences. Craft held the position of district chief of the Benton Fire Department, a position which involves substantial professional responsibility to and on behalf of the public. He should be expected to either internalize the matters communicated to him via the notice or bring it with him as a reference when attending an interrogation. To hold otherwise in this case would burden fire departments and (potentially other employers of civil service employees) with unreasonable redundancy. It also would have the absurd consequence of nullifying substantively justified discipline of civil service employees on hyper-technical procedural grounds. This assignment of error lacks merit.
In Alexander v. City of Alexandria , 2014-452 (La. App. 3 Cir. 11/5/14), 150 So.3d 590, writ denied , 2014-2563 (La. 2/27/15), 159 So.3d 1071, the Third Circuit held that, where proper notice was given prior to the first interrogation, La. R.S. 33:2181(B)(2) was not violated by reason of failure to reissue notice immediately prior to each subsequent interrogation. In so holding, the Alexander court noted that the employee: (1) had the notice packet with him at each subsequent interrogation; (2) knew "exactly what was occurring in relation to the investigation," and (3) knew the identity of all persons present at each interrogation. In sum, the employee was not prejudiced by the fire department not reissuing the notice immediately prior to each subsequent interrogation.
Our holding comports with Alexander . In this case, like Alexander, Craft was given proper notice prior to his first interrogation. Furthermore, he has not alleged any prejudice or harm as a result of the fire department not reissuing the notice packet to him prior to each interrogation. In fact, the record contains a document that Craft handwrote prior to the polygraph examination. Therein, Craft explained the nature of the investigation quite aptly. The record also indicates that Craft was made aware of all persons present at the polygraph examination.
*394 It matters not whether Craft brought the pre-interrogation notice to the subsequent interrogations. He has not alleged any prejudice resulting from the fire department not reissuing the notice. Furthermore, as explained above, it was Craft's responsibility to internalize the matters communicated to him in the notice packet or to bring the notice packet to his interrogation so he could refer to it if needed. This assignment of error lacks merit.
Craft's supposed violation of gag order: new notice. Craft acknowledges that the notice of investigation letter also "ordered him not to discuss the investigation with anyone other than his attorney, representative, or investigating officer" and also advised that "failure to comply [with that order] would result in charges of insubordination being filed" against him. On June 13, 2017, Ms. Roberts, a witness regarding the Hicks complaint, was interviewed. She stated that, on May 27, 2017, Craft told her he was on administrative leave and was under investigation. He further stated to her that he didn't know, but suspected, that either his ex-wife or Hicks had instigated the investigation. Ms. Roberts further stated that Craft told her that she could not "say anything or he would be fired on the spot," and that the day before her interview, he called and asked if "anyone had contacted her," apparently regarding the Hicks complaint.[7]
Craft was interrogated on June 14, 2017. Therein, Chief Turner asked Craft whether he had discussed the investigation with anyone. Despite the above conversations with Ms. Roberts, Craft answered with an unqualified "no." Prior t o that interrogation, Craft was not made aware that new charges - based on his violation of the gag order - had been actually filed against him. Craft claims that his rights under La. R.S. 33:2181 were thus violated. Notably, Craft maintains this contention despite admittedly having been notified in writing that his violation of the gag order would result in new charges for insubordination being filed against him.
As previously stated, prior to his discussion of the investigation with Ms. Roberts and the fire chief's inquiry in that regard, Craft was warned that violation of the gag order would result in charges of insubordination. Thus, Craft was sufficiently notified under La. R.S. 33:2181. The fire department was not required to provide Craft with yet another notice stating that his discussion of the investigation in contravention of the gag order was under investigation. Nor was the fire department required to treat this matter as a separate investigation. This assignment of error lacks merit.
Polygraph: audio recording or transcript. All interrogations of a fire employee in connection with a disciplinary investigation by the fire department must be recorded in full. La. R.S. 33:2181(B)(4). Upon written request by the employee to the Fire Chief, the Fire Chief must give the employee an audio recording or transcript of the employee's statements made in an interrogation conducted regarding such investigation. Id.
Craft contends that his rights under La. R.S. 33:2181(B)(4) were violated in that he was not given an audio recording of the polygraph examination. The fire department admits that Craft was not provided with an audio recording, but points out that a "written report" of the polygraph examination was made available to *395 Craft's attorney and was introduced into evidence at the March 29, 2018, remand hearing before the board. The written report is contained in the record. The polygraph examiner's testimony indicates that it contains a transcript of all of the questions relevant to the investigation and Craft's answers thereto. Our review of the document itself, which is contained in the record, confirms the accuracy of that testimony. Furthermore, Craft makes no argument that the written report contained inaccuracies or suffered from omissions. Accordingly, we hold that La. R.S. 33:2181(B)(4), which requires the employee to be given an audio recording or transcript of his statements upon written request, was satisfied. This assignment lacks merit.
Prior counseling - estoppel and the 60 day deadline. Assignments 9 & 10
Craft makes two alternative arguments predicated on Chief Turner's "counseling" him 3 to 4 weeks prior to the Hicks complaint. According to Craft, this prior counseling constituted either: (1) discipline for the same conduct for which he was eventually terminated; or (2) the commencement of the investigation, which began the running of the 60-day time limit. Preclusion or estoppel. In support of his argument that that this "counseling" constituted disciplinary action and therefore precluded the fire department from further discipline based on the same conduct, Craft cites Department of Public Safety, Office of State Police v. Rigby, 401 So.2d 1017, 1020 (La. App. 1 Cir. 1981), writ denied , 406 So.2d 626 (La. 1981), and London v. Parkway & Park Comm'n , 503 So.2d 556, 557 (La. App. 4 Cir. 1987).
In Rigby , the employee initially received a letter of reprimand after the subject incident. Rigby, 401 So.2d at 1020. At the time this reprimand letter was sent, the appointing authority "had full knowledge of the incident," yet the employer later sought to "revive this incident as ground for further disciplinary measures." The First Circuit held that "[h]aving disciplined the employee for this infraction, the appointing authority is now estopped from seeking at a later date to revive this incident as a ground for further disciplinary measures." Id.
In Mills v. City of Shreveport , 58 F.Supp.3d 677, 685 (W.D. La. 2014), the federal district court held that documented verbal counseling constitutes disciplinary action. In that case, the verbal counseling was noted and placed in the employee's file.[8]
The present case is distinguishable from Rigby on two separate grounds. First, in Rigby, the employer had "full knowledge" of the subject incident at the time it initially decided to merely reprimand the employee. Here, Craft admits that he told Chief Turner during the counseling that he was going to his house to visit his estranged wife and children when he disappeared from the fire station in the middle of the night. Craft later admitted *396 that such was not the truth: he omitted his visits to Ms. Roberts' house in his explanation of his absences to Chief Turner. Thus, unlike Rigby, the fire department in this case did not have "full knowledge" of the subject incident at the time of the "prior counseling." Second, the employee in Rigby initially received a written letter of reprimand. Here, Craft was given mere oral, undocumented instructions to take vacation leave or swap shifts if he wanted to conduct personal business during his otherwise scheduled work time. Such does not constitute discipline at all. Mills, supra. Accordingly, Craft's argument that the employer was precluded or estopped from imposing further discipline by reason of the "prior counseling" is without merit.
60-day time limit on investigations. In the alternative, Craft argues that the fire department's investigation into his misconduct exceeded the applicable 60 day time limitation. La. R.S. 33:2186(A) does impose a 60-day time limit on a fire department's investigation of a firefighter's alleged misconduct. As previously mentioned, the premise of Craft's argument is that the "investigation" began three to four weeks prior to the Hicks complaint's filing when Chief Turner "counseled" him regarding complaints about his late night absences by the other fire employees, supra.
Craft cites Bracey v. City of Alexandria, 2011-621 (La. App. 3 Cir. 2/1/12), 84 So.3d 669, for the proposition that the "investigation" begins when the fire department undertakes any investigation, not when a formal complaint on the same matter is later filed. In so doing, Craft misrepresents the holding of Bracey . Therein, the employer hired a private investigator to conduct video surveillance of the employee regarding suspected misuse of sick leave. The Civil Service Board found that, for purposes of the 60-day time limit on investigations, the commencement date of the video surveillance was the commencement date of the investigation. The Third Circuit held that (1) this finding by the Civil Service Board was a finding of fact; (2) as such, it was subject to manifest error review; and (3) it was not manifestly erroneous. Id.
Apparently, Craft has raised this issue for the first time in this appeal. His "pretrial brief" submitted to the board was silent regarding the 60-day deadline, as were his two appeal briefs submitted to the district court. Thus, Craft waived the argument. Johnson v. State , 2002-2382 (La. 5/20/03), 851 So.2d 918. Furthermore, assuming arguendo Craft had raised this argument before the board, the board's decision thereon would have been a finding of fact subject to manifest error review. Bracey, supra. The record would adequately support a finding that the investigation did not begin until the Hicks complaint, i.e., that Chief Turner's "counseling" Craft did not constitute the commencement of an investigation for purposes of La. R.S. 33:2186(A). Therefore, the board would not have been manifestly erroneous in so finding - and thus rejecting this argument by Craft. Accordingly, this assignment by Craft is without merit.
CONCLUSION
Craft's termination is affirmed. All costs of this appeal are assigned to Craft.
AFFIRMED.

Chief Turner conducted the internal affairs investigation in this case. He is the assistant to Fire Chief Wallace.

It subsequently was revealed that Craft was actually visiting Ms. Roberts at her home. Craft subsequently admitted that he deactivated the GPS for the purpose of concealing his whereabouts from his subordinates at the fire department. However, Craft maintained that, during the subject absences, he did go home, but left from there and went to Ms. Roberts' house.

The Fire Department concluded that these other allegations were "unfounded" because Hicks refused to cooperate in the investigation.

Craft was given the notice of investigation letter and the Firefighter Bill of Rights on May 26, 2017. He was given a copy of the Hicks complaint on June 6, 2017.

The polygraph examiner testified that he made an audio recording of the polygraph examination, and used that recording to generate a written report of the examination, which included the questions and answers pertaining to the matters under investigation. However, the audio recording itself was lost before it could be produced in discovery. The written report was introduced into evidence and was made available to Craft's counsel.

In Craft's brief, he enumerates 12 assignments of error. However, he designates his final assignment as number "13" and his preceding assignment as number "11." In this opinion, we refer to Craft's final assignment as number 12.

Ms. Roberts' testimony confirmed Hicks' allegations regarding Craft's late night visits to her house in the fire truck while Craft was on duty. She also stated that there were other such instances which Hicks had not reported.

In London, the employee, a member of a tree cutting crew, "was caught sitting in the crew's truck reading a newspaper while his fellow employees were raking and cleaning up." London at 556. The employee was "not dismissed because of this incident alone but in consideration of his past record," which showed that he was disciplined numerous times for insubordination, negligence in caring for employer equipment, and absenteeism. Id. at 557. The employee argued that the employer was estopped from reviving these previous incidents as grounds for further discipline, as he had already been disciplined therefor. The Fourth Circuit rejected this argument, stating "an employee cannot be disciplined a second time for the same offense, but previous offenses and the penalties may be considered in determining what is the appropriate penalty for subsequent offense."Id.